117 N.J. Super. 415 (1971)
285 A.2d 46
JAMES H. BLAIR, DIRECTOR, DIVISION ON CIVIL RIGHTS, DEPARTMENT OF LAW AND PUBLIC SAFETY, STATE OF NEW JERSEY, COMPLAINANT-RESPONDENT,
v.
THE MAYOR AND COUNCIL, BOROUGH OF FREEHOLD; THE FREEHOLD FIRE DEPARTMENT OF FREEHOLD, NEW JERSEY, A NEW JERSEY CORPORATION, CURTIS YATES, AND WALTER KOZLOSKI, RESPONDENTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 1971.
Decided December 13, 1971.
*416 Before Judges CONFORD, MATTHEWS and FRITZ.
Mr. Jerry Sokol argued the cause for appellants Mayor and Council of the Borough of Freehold.
Mr. William R. Blair Jr. argued the cause for appellant Freehold Fire Department (Messrs. Parsons, Canzona, Blair & Warren, attorneys).
Mr. Douglas J. Harper, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
PER CURIAM.
This is an appeal from an order of the Director of the Division on Civil Rights which determined *417 that the membership and admission procedures for entry into the volunteer fire department of the Borough of Freehold, as contained in a certain ordinance of the borough, violated the provisions of the Law Against Discrimination, N.J.S.A. 10:5-1 et seq. The order of the director has been appealed by both the mayor and council of the borough and the fire department.
Except insofar as he concludes that the facilities of the fire department constitute a public accommodation under the provisions of the Law Against Discrimination, the findings, determination and order of the director are affirmed, essentially for the reasons stated by hearing examiner Pressler.
We are not persuaded that the facilities maintained for the pleasure and sociability of members of the volunteer fire department are the equivalent of facilities maintained for the use of the general public of a personal nature. The facilities of the fire department, as shown by the record here, are maintained for the use of its members and not for the general public. Such facilities are therefore not an accommodation within the meaning of the act.
Our reading of the record satisfies us that no overt act of discrimination with respect to either Jews or blacks was established at the hearing below. This in itself does not establish the lack of discrimination. See Jackson v. Concord Company, 54 N.J. 113 (1969). It is our conclusion that the admission procedures established under the various borough ordinances, including the latest, constitute an unlawful employment practice because of the establishment of requirements irrelevant to the proper performance of the duties of firemen. We cannot conceive of any lawful reason for the requirement of a vote of the membership of a volunteer fire department for admission of a new member thereto. The only rational reason for such a requirement is exclusion. The overall record contains substantial credible evidence to warrant the conclusion that such exclusion was motivated at least in part by race. The determination of *418 the director must therefore be sustained. Atkinson v. Parsekian, 37 N.J. 143, 149 (1962).
Finally, we have no difficulty in affirming the director's conclusion that he has jurisdiction over municipalities and volunteer fire companies. To hold otherwise would undermine the very substance of the Law Against Discrimination. As Mr. Justice Jacobs pointed out in his opinion for the court in Jenkins v. Morris Tp. School Dist. and Bd. of Ed., 58 N.J. 483 (1971):
[P]olitical subdivisions of the states whether they be "counties, cities or whatever" are not "sovereign entities" and may readily be bridged when necessary to vindicate federal constitutional rights and policies. * * * It seems clear to us that, similarly, governmental subdivisions of the state may readily be bridged when necessary to vindicate state constitutional rights and policies. This does not entail any general departure from the historic home rule principles and practices in our State in the field of education or elsewhere; but it does entail suitable measures of power in our State authorities for fulfillment of the educational and racial policies embodied in our State Constitution and in its implementing legislation. * * * [at 500]
Affirmed.