NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0354-15T1

JEFFREY SAUTER,

     Plaintiff-Appellant,

v.

COLTS NECK VOLUNTEER FIRE COMPANY
NO. 2; CHRISTOPHER QUINCANNON,
individually and as a Supervisor
of Colts Neck Volunteer Fire Company
No. 2; KEVIN KETELSEN, JR., individually
and as a Supervisor of Colts Neck
Volunteer Fire Company No. 2; and
JOHN SAUTER, individually and as
a Supervisor of Colts Neck Volunteer
Fire Company No. 2,

     Defendants-Respondents.

| APPROVED FOR PUBLICATION |
| :---: |
| September 13, 2017 |
| APPELLATE DIVISION |

_____

Submitted December 14, 2016 – Decided September 13, 2017

Before Judges Alvarez, Accurso and Manahan.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2637-13.

Richard C. Sciria, attorney for appellant.

Dvorak & Associates, LLC, attorneys for respondents (Danielle Abouzeid, of counsel and on the brief; Courtney E. Dowd, on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

Plaintiff Jeffrey Sauter, a volunteer firefighter, appeals from a summary judgment dismissing his complaint against defendant Colts Neck Volunteer Fire Company No. 2, and several individual officers and members of the fire company, including his brother. Plaintiff contends the vote of the fire company terminating his membership constituted a violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. Because we agree with the trial court that plaintiff is not an employee of Fire Company No. 2 entitled to the protections of CEPA, we affirm.

The essential facts are undisputed. Colts Neck's fire department consists of two all-volunteer companies, Colts Neck Volunteer Fire Company No. 1 and Fire Company No. 2, overseen by an Executive Fire Council made up of representatives from each company and members or designees of the Township Committee. See Colts Neck Municipal Code, §§ 28-1 to -3. Volunteer firefighters in Colts Neck are eligible for Emergency Services Volunteer Length of Service Award Program[1] (LOSAP), N.J.S.A.

---

[1] Enacted in 1997, the Emergency Services Volunteer Length of Service Award Program Act enabled municipalities such as Colts Neck to create, by ordinance, defined contribution plans to provide limited tax-deferred income benefits to active volunteer members of local fire or first aid organizations. See N.J.S.A. 40A:14-185 to -186, 188. Under the statute, a municipality can contribute for each volunteer member a minimum of $100 and maximum of $1150 per year of active emergency service, subject
(continued)

40A:14-183 to -193, deferred compensation benefits of between $400 and $1150 per year of active service, Colts Neck Municipal Code, § 36-4. The Township maintains workers' compensation and liability insurance on their behalf for incidents arising out of the performance of their firefighting duties. Colts Neck Municipal Code, § 28-17. Members are also entitled to reduced fees for certain municipally issued permits and licenses. Id. at § 68-2.

Plaintiff was a life member of Fire Company No. 2, having joined when he was in high school and served for over twenty years until 2013, when he was voted out by the general membership. His LOSAP account contained $5871.71 as of the motion date, which he will be eligible to receive when he turns fifty-five, several years from now. At all times relevant to this litigation, plaintiff has been a full-time employee of the Monmouth County Sheriff's Office.

---

(continued)
to periodic cost of living increases. N.J.S.A. 40A:14-189b. See Ortley Beach Prop. Owners Ass'n v. Fire Comm'rs of Dover Twp. Fire Dist. No. 1, 320 N.J. Super. 132, 135-36 (Law Div. 1998), aff'd, 330 N.J. Super. 358 (App. Div.), certif. denied, 165 N.J. 530 (2000). Colts Neck adopted its ordinance in 2003 and awards annual contributions on the basis of points earned for various tasks, such as drills, calls or meetings and attending training. In order to qualify for an award, a member must acquire a minimum of sixty points in the calendar year. Colts Neck Municipal Code, § 36-2.

It is fair to say that plaintiff's relations with Fire Company No. 2 over his twenty-year tenure were not always harmonious. This is his second CEPA action against the fire company. He first sued the fire company in 2004 after it suspended him for eighteen months. Plaintiff claimed the suspension was in retaliation for his complaints about the bid process for renovations to the company's fire hall after his brother was denied the contract. Although that suit was eventually settled for $10,000, inclusive of plaintiff's attorney's fees, plaintiff continued to believe the fire company "owed" him another seven or eight thousand dollars to make him "whole" for his fees in that suit.

Several years after that settlement, plaintiff again raised the issue of his legal fees with various members of Fire Company No. 2. In response to plaintiff's request, the general membership voted to reimburse him for what remained of his fees from the first suit. The fire company, however, subsequently got legal advice that doing so would jeopardize its 501(c)(3) tax status and so advised plaintiff. As a consequence, the company declined to make any further payment to him.

At about the same time as these events, Fire Company No. 2 discovered after the death of its long-time treasurer that he had embezzled approximately $300,000 from its accounts. The

company subsequently made a claim under its fidelity policy for the loss. After the fire company notified plaintiff it would not reimburse his fees, he wrote to the fire company's fidelity carrier claiming the company's 2011 proof of loss for the defalcation was fraudulent. The alleged fraud was failing to disclose a letter plaintiff had written to the Monmouth County Prosecutor in 2003 in connection with the complaints he made in his first suit, which that office investigated and found did not warrant further action. The member who submitted the claim on behalf of the fire company is a lawyer, and the first person to have questioned the legality of the fire company reimbursing plaintiff for his attorneys' fees.

Following his letter to the company's fidelity carrier, plaintiff reported to the Executive Fire Council that Fire Company No. 2 was permitting members to dispose of their household trash in the fire company's dumpster, something plaintiff himself admitted doing on occasion. Plaintiff, employing the advice the fire company got about not reimbursing his fees, asked that the Executive Council obtain a legal opinion that members using the dumpster did not threaten the fire department's 501(c)(3) status by conferring a financial benefit on insiders.

Days later, several members of Fire Company No. 2, including plaintiff's brother, signed a letter to the president and the membership committee lodging a formal complaint against plaintiff. Those members alleged plaintiff had been disrespectful and abusive to members at meetings, drills and fire calls after "the outcome of the legal opinion was not in [his] favor"; went "out on his own to sabotage the company's insurance claim," by "falsely claiming that the company intentionally attempted to defraud the insurance company"; and made "a frivolous charge" to the Executive Fire Council that use of the dumpster by members could threaten the company's 501(c)(3) status. The complainants alleged plaintiff's "angry and belligerent" conduct was "unbecoming of a Company #2 member," and "detrimental to the Company and the safety of members both at the fire house and on the fire ground."

The membership committee took the matter under advisement and made the decision to terminate plaintiff's membership in Fire Company No. 2. Thereafter, several members wrote to the president and the membership committee asking that plaintiff be immediately reinstated to allow him "to defend himself against the charges" in accordance with the bylaws and that the membership committee bring its recommendation to the company for a vote.

The membership committee rescinded the termination and suspended plaintiff pending investigation and presentation of the matter to the membership. The committee subsequently sustained each of the charges against plaintiff and again determined to terminate his membership. Plaintiff appealed its decision to the general membership, which voted fourteen to eight against reinstatement.

Plaintiff filed suit in the Law Division alleging violations of CEPA, the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, and defamation. After discovery, defendants moved for summary judgment on all counts. Plaintiff withdrew his LAD claim at argument, and Judge Gummer granted summary judgment dismissing the remainder of the complaint in an opinion from the bench. After undertaking a comprehensive review of the law, the judge dismissed the CEPA claim finding plaintiff was not an employee entitled to the statute's protections. In addition to relying on the plain language of the statute and State and federal case law interpreting it, the judge also adopted the analysis Judge Quinn applied in dismissing a very similar CEPA claim against the same fire company by another of its members in 2005.

On appeal, plaintiff argues the court erred in finding he was not an employee as defined in CEPA and in relying on

unpublished decisions and other cases with no precedential value to reach its decision. Alternatively, plaintiff contends "public policy dictates" we should expand CEPA, as "the [LAD] has [been expanded]," to permit plaintiff to pursue a CEPA claim against the fire company. We reject those arguments.

CEPA was enacted in 1986 to "protect employees who report illegal or unethical work-place activities." Higgins v. Pascack Valley Hosp., 158 N.J. 404, 417 (1999) (quoting Barratt v. Cushman & Wakefield, 144 N.J. 120, 127 (1996)). The statute codified and extended the Supreme Court's ruling in Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72, (1980), which created a common law cause of action for at-will employees wrongfully discharged in violation of a clear mandate of public policy. Barratt, supra, 144 N.J. at 127. The common law cause of action is grounded in the employment at-will doctrine. Pierce, supra, 84 N.J. at 72. As the Court explained in Pierce, "[a]n employer's right to discharge an employee at will carries a correlative duty not to discharge an employee who declines to perform an act that would require a violation of a clear mandate of public policy." Ibid. CEPA created "a statutory exception to the general rule that an employer may terminate an at-will employee with or without cause." Higgins, supra, 158 N.J. at

418. Just as in the common law action, the employer-employee relation is at the heart of the statute.

In CEPA, the Legislature extended Pierce by prohibiting an employer from taking retaliatory action, defined as "discharge, suspension or demotion . . . or other adverse employment action . . . in the terms and conditions of employment," against an employee who discloses, threatens to disclose, or refuses to participate in an activity of the employer "that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law." N.J.S.A. 34:19-2, 19-3; Barratt, supra, 144 N.J. at 127. The statute defines an employee broadly as "any individual who performs services for and under the control and direction of an employer for wages or other remuneration." N.J.S.A. 34:19-2b.

In signing the bill, Governor Kean noted the "unfortunate" fact "that conscientious employees have been subjected to firing, demotion or suspension for calling attention to illegal activity on the part of . . . employer[s]," and, conversely, "that illegal activities have not been brought to light because of the deep-seated fear on the part of an employee that his or her livelihood will be taken away without recourse." Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 418 (1994) (quoting Office of the Governor, News Release at 1 (Sept. 8,

1986)).  The Court has proclaimed the purpose of CEPA is "'to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'"  Mehlman v. Mobil Oil Corp., 153 N.J. 163, 179 (1998) (quoting Abbamont, supra, 138 N.J. at 431).  The statute "seeks to overcome the victimization of employees and to protect those who are especially vulnerable in the workplace from the improper or unlawful exercise of authority by employers."  Abbamont, supra, 138 N.J. at 418.

Although plaintiff concedes he does not perform services for Fire Company No. 2 for wages, he asserts his receipt of LOSAP benefits constitutes sufficient remuneration to bring him within the definition of an employee under the statute.  We disagree.

The paramount goal in interpreting a statute is, of course, to divine the Legislature's intent, "and, generally, the best indicator of that intent is the statutory language."  DiProspero v. Penn, 183 N.J. 477, 492 (2005).  We "ascribe to the statutory words their ordinary meaning and significance and read them in context . . . so as to give sense to the legislation as a whole."  Ibid. (internal citation omitted).  Importantly, we do not focus on isolated words or read them "in a way which sacrifices what appears to be the scheme of the statute as a

whole." Chasin v. Montclair State Univ., 159 N.J. 418, 427 (1999) (quoting Zimmerman v. Municipal Clerk of Twp. of Berkeley, 201 N.J. Super. 363, 368 (App. Div. 1985)).

There is no dispute that plaintiff performed his firefighting services for Colts Neck under the control and direction of Fire Company No. 2. Thus he satisfies at least part of CEPA's definition of an "employee" as one who "performs services for and under the control and direction of an employer for wages or other remuneration." N.J.S.A. 34:19-2b. The question is whether he performed those services "for wages or other remuneration"[2] in an employer-employee type relationship. Cf. Feldman v. Hunterdon Radiological Assocs., 187 N.J. 228, 239 (2006) (finding the plaintiff's work as a radiologist in return for an annual salary constituted the rendering of services for remuneration, leaving only the question of "whether, in light of her status as a shareholder-director, [the] plaintiff was

---

[2] We do not endorse the trial court's discrete finding, made much of by plaintiff, that plaintiff's sworn statement that he joined Fire Company No. 2 because he was "[i]nterested in doing something for the community" precluded a finding he performed his services "for wages or other remuneration." Although we understand the court was focused on the fact that plaintiff volunteered his services without any expectation of payment, a critical factor here, whether one is or is not an employee protected by CEPA cannot turn on one's subjective motivation for taking a job. Many employees who take jobs for reasons other than "wages or other remuneration" nevertheless expect to be, and are, paid for their work and protected by the statute.

sufficiently subject to [the defendant's] 'control and direction' that she could reasonably be considered an employee rather than an employer").

We accept that LOSAP benefits, as an "award" for volunteer service, constitute "remuneration" in some sense, albeit not as the term is commonly used to represent payment of "an equivalent for" services rendered. See Webster's Third New International Dictionary 1921 (2002) (defining "remunerate"). The LOSAP benefits available to volunteer firefighters in Colts Neck nowhere near approximate the actual monetary value of the services those firefighters provide. Although plaintiff could earn points toward an annual LOSAP award through his participation in drills, calls or training, the program does not consider or treat those activities as remunerated tasks. Certainly the very modest LOSAP benefits plaintiff could expect to receive in the future would not be sufficient compensation to change the voluntary nature of the services themselves. See Vogt v. Belmar, 14 N.J. 195, 206 (1954) (characterizing the relationship between a volunteer firefighter and the municipality in the context of workers' compensation as "not that of master and servant in the true sense" but "rather a gratuitous consensual undertaking to perform 'public fire duty'

12                                                      A-0354-15T1

as a member of a volunteer fire company, under the 'control or supervision' of the municipal governing body").

The question then is whether the Legislature, in employing the word "remuneration" in addition to "wages," has evinced an intention to extend the protections of the statute to volunteers such as plaintiff who are not compensated for their work. See Craster v. Bd. of Comm'rs, 9 N.J. 225, 230 (1952). No such intention is apparent in the wording or structure of CEPA. Moreover, reading "remuneration" in isolation, in an effort to bring plaintiff within the ambit of the statute, impugns the clear statutory intent to protect those "employees" who risk their livelihoods in reporting illegal activities in the workplace. See Abbamont, supra, 138 N.J. at 418 (observing that CEPA seeks to "protect those who are especially vulnerable in the workplace from the improper and unlawful exercise of authority of employers").

Plaintiff argues that CEPA, as remedial legislation, is to be interpreted liberally, see Dzwonar v. McDevitt, 177 N.J. 451, 463 (2003), and claims the Court has done so in extending its reach to independent contractors, who, like plaintiff, are not traditional employees, see D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 127 (2007). He contends that applying the

Pukowsky[3] test the Court has adopted for determining whether one is an employee under CEPA supports that he stands in an employment relationship with Fire Company No. 2.  Although we agree that CEPA is remedial legislation and thus should be interpreted liberally "to effectuate its important social goal," Higgins, supra, 158 N.J. at 420 (quoting Abbamont, supra, 138 N.J. at 431), we are unpersuaded by plaintiff's other arguments.

There is no question but that CEPA's definition of "employee" is broad, encompassing more workers "than the narrow band of traditional employees," D'Annunzio, supra, 192 N.J. at 121 (characterizing the proposition as "beyond cavil"), and that it extends to some workers otherwise characterized as independent contractors, id. at 125-27.  In order for "CEPA's scope [to] fulfill its remedial promise," the Court has deemed it critical that the statute's definition of "employee" reflect "the modern reality of a business world in which professionals and other workers perform regular or recurrent tasks that further the business interests of the employer's enterprise, notwithstanding that they may receive remuneration through contracts instead of through the provision of wages and benefits."  Id. at 124 (emphasis added).

---

[3] Pukowsky v. Caruso, 312 N.J. Super. 171 (App. Div. 1998).

So viewed, it is plain the Court did not "extend" the statute to independent contractors. Instead, in D'Annunzio the Court acted to ensure CEPA's protections for those workers, regardless of label, who stand in a true employer-employee relationship with the person or entity purchasing their services. See Feldman, supra, 187 N.J. at 241 ("courts must look to the goals underlying CEPA and focus not on labels but on the reality of plaintiff's relationship with the party against whom the CEPA claim is advanced"). Although plainly acknowledging that wages are not the only means of compensating workers entitled to the protections of CEPA, the Court has never suggested that an employer-employee relationship, the sine qua non to establishing liability under the statute, cf. Pukowsky, supra, 312 N.J. Super. at 184, could be found in the absence of compensation for services.

The Court's tool for assessing "the reality of plaintiff's relationship with the party against whom the CEPA claim is advanced" is the Pukowsky test, a twelve-factor hybrid[4]

---

[4] The twelve factors are:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation--supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the

(continued)

15                                                    A-0354-15T1

reflecting both the common law right-to-control test and an economic realities test.  D'Annunzio, supra, 192 N.J. at 123. The Court endorsed the Pukowsky test as the best means of identifying "the specialized and non-traditional worker who is nonetheless integral to the business interests of the employer," and thus deserving of CEPA's protections.  Id. at 124-25.  The test "focuses heavily on work-relationship features that relate to the employer's right to control the non-traditional employee, and allows for recognition that the requisite 'control' over a professional or skilled person claiming protection under social legislation may be different from the control that is exerted over a traditional employee."  Id. at 123.

Plaintiff, of course, is not arguing he is an independent contractor who should be considered an employee under CEPA. Plaintiff is a volunteer member of a fire company contending his LOSAP benefits are remuneration sufficient to qualify him as an

---

(continued)

> individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.
>
> [D'Annunzio, supra, 192 N.J. at 123.]

"employee" under CEPA's definition of that term. Unlike independent contractors, whom the Court has noted are not excluded, explicitly, from CEPA's definition of "employee" as a person "performing services for an employer for remuneration," D'Annunzio, supra, 192 N.J. at 121, volunteers, because they perform services without expectation or receipt of payment, are explicitly excluded.

While we are not convinced of the necessity of analyzing plaintiff's status under Pukowsky in light of CEPA's plain language excluding volunteers from the definition of "employee," doing so does not alter our conclusion that he does not come within the ambit of the statute. Although those factors concentrating on the employer's control and direction of the work, factors one (the employer's right to control the means and manner of the worker's performance), two (the kind of occupation — supervised or unsupervised), four (who furnishes the equipment and workplace), and nine (whether the work is an integral part of the business of the "employer"), tilt in favor of finding an employer-employee relationship; others, factors three (skill) and five (the length of time an individual has worked), are neutral here. The remainder of the Pukowsky factors, six (method of payment), seven (the manner of termination of the work relationship), eight (whether there is annual leave), ten

(whether the worker accrues retirement benefits), eleven (whether the "employer" pays social security taxes) and twelve (the intention of the parties), all strongly cut against finding plaintiff is an employee covered by CEPA.

Overshadowing all the other Pukowsky factors, of course, is that plaintiff was not remunerated for the drills, calls and training he undertook as a member of Fire Company No. 2, and neither he nor the fire company ever intended to create an employment relationship between them when plaintiff became a member of the organization. See Kounelis v. Sherrer, 396 F. Supp. 2d 525, 533-34 (D.N.J. 2005) (finding intent of the parties most significant Pukowsky factor in rejecting prisoner's CEPA claim against corrections officials based on his prison sanitation job). Because plaintiff did not perform services for Colts Neck as a member of its volunteer fire department for wages or other remuneration, notwithstanding that those services were performed under the fire company's direction and control, he simply cannot qualify as an employee under CEPA regardless of the test one employs to evaluate the relationship.

Our conclusion is buttressed by consideration of those cases that have focused on whether the plaintiff is "within the class of people that the statute was designed to protect." See Feldman, supra, 187 N.J. at 249-50 (finding the plaintiff's

employment agreement with the professional association notwithstanding, no reasonable fact-finder could conclude the plaintiff shareholder-director "was an 'employee' or a member of the vulnerable class of persons the CEPA statute was designed to protect"); Yurick v. State, 184 N.J. 70, 76-77 (2005) (discussing then Judge Hoens' Appellate Division dissent opining county prosecutor not an "employee" under CEPA and "not the type of vulnerable person that requires CEPA's protection"); Casamasino v. City of Jersey City, 304 N.J. Super. 226, 242 (App. Div. 1997) (finding tenured tax assessor could not argue he was the type of employee who harbored deep-rooted fear of losing his livelihood if he spoke out against his employer's activities, policies or practices), rev'd on other grounds, 158 N.J. 333 (1999).

None of plaintiff's alleged "whistleblowing" activities posed the least threat to his livelihood for the simple reason that he was not "employed" as a volunteer firefighter.[5] Plaintiff, like the plaintiffs in Feldman, Yurick and Casamasino, is simply not within the class of workers CEPA was

---

[5] The point is easily made by considering how different a case this would be had plaintiff made similar allegations against his employer, the Monmouth County Sheriff's Office, and been fired for them. "Blowing the whistle" on the leadership of a membership organization to which one belongs obviously carries none of the financial risk of doing so in the workplace, the only venue where CEPA applies.

designed to protect. As a volunteer member of his fire company, plaintiff stands outside the employment relationship which gave rise to the doctrine underpinning the statute and beyond the scope of the problem the Legislature designed CEPA to address. In considering whether plaintiff performed firefighting services "for wages or other remuneration," we are not free to read those words in a way that sacrifices the scheme of the statute to protect "those who are especially vulnerable in the workplace from the improper or unlawful exercise of authority" by employers bent on retaliation against a "whistleblower." See Abbamont, supra, 138 N.J. at 418; see also Chasin, supra, 159 N.J. at 427.

Plaintiff argues in the alternative, that "public policy dictates" we should expand CEPA, as "the [LAD] has [been expanded]," to permit him to pursue a CEPA claim against Fire Company No. 2. Specifically, plaintiff contends that because this court has held "a volunteer fire department is considered an employer of its volunteers within the meaning of the [LAD]," see Hebard v. Basking Ridge Fire Co. No. 1, 164 N.J. Super. 77, 83 (App. Div. 1978), appeal dismissed, 81 N.J. 294 (1979); Blair v. Mayor & Council, Borough of Freehold, 117 N.J. Super. 415, 417-18 (App. Div. 1971), certif. denied, 60 N.J. 194 (1972); we should similarly construe CEPA. In addition to our having no

ability to rewrite a plainly written enactment of the Legislature, which limits the protections of CEPA to those persons performing services for an employer for wages or other remuneration, N.J.S.A. 34:19-2b; see DiProspero, supra, 183 N.J. at 492, we question the premise of the argument.

As the Court has recently reminded, although it has "[o]n occasion, when appropriate," looked to the LAD in construing CEPA, "CEPA and [the] LAD are statutes that have their own distinct purposes and are worded differently to achieve those purposes." Donelson v. DuPont Chambers Works, 206 N.J. 243, 261-62 (2011). The LAD's definition of "employee" is broader than CEPA's.[6] In defining the term, the LAD states only that "'[e]mployee' does not include any individual employed in the domestic service of any person."[7] N.J.S.A. 10:5-5f. Indeed, it

---

[6] The LAD is a much broader statute than CEPA, providing that "[a]ll persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, publicly assisted housing accommodation, and other real property without discrimination," N.J.S.A. 10:5-4, its aim being "nothing less than the eradication 'of the cancer of discrimination.'" Fuchilla v. Layman, 109 N.J. 319, 334 (quoting Jackson v. Concord Co., 54 N.J. 113, 124 (1969)), cert. denied, 488 U.S. 826, 109 S. Ct. 75, 102 L. Ed. 2d 51 (1988).

[7] The LAD's definition of "employer" is similarly inclusive, encompassing any person, "unless otherwise specifically exempt under another section of [this act], and includes the State, any political or civil subdivision thereof, and all public officers, agencies, boards or bodies." N.J.S.A. 10:5-5e. A "person" is
(continued)

was the very breadth of the LAD's language that prompted our courts to develop the Pukowsky test to determine who qualifies as an "employee" under the statute "in cases lacking an actual or customary employer-employee relationship." Thomas v. Cty. of Camden, 386 N.J. Super. 582, 595 (App. Div. 2006).

Although the LAD's definition of "employee" lacks CEPA's qualification that services be performed "for wages or other remuneration," it is somewhat anomalous that a volunteer firefighter should be considered an employee under the LAD but not under CEPA, in light of the Court's endorsement of the Pukowsky test for determining the existence of an employment relationship under both statutes. See D'Annunzio, supra, 192 N.J. at 122-25. Accordingly, we turn to analyze the two cases on which plaintiff relies to argue that volunteer firefighters should be treated as employees of their fire companies under CEPA as they are under the LAD.

The first case, Blair, dates from 1971, and involves an appeal from a final decision of the Director of the Division on Civil Rights regarding the membership and admission policies of a volunteer fire department in the Borough of Freehold. Blair,

_____

(continued)
"one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries." N.J.S.A. 10:5-5a.

supra, 117 N.J. Super. at 416-17.  The opinion, in which we affirmed the decision of the Director "essentially for the reasons stated by hearing examiner [Sylvia B.] Pressler," is too brief to allow any real sense of the facts.  Id. at 417.  We concluded:

> the admission procedures established under the various borough ordinances, including the latest, constitute an unlawful employment practice because of the establishment of requirements irrelevant to the proper performance of the duties of firemen.  We cannot conceive of any lawful reason for the requirement of a vote of the membership of a volunteer fire department for admission of a new member thereto. The only rational reason for such a requirement is exclusion. The overall record contains substantial credible evidence to warrant the conclusion that such exclusion was motivated at least in part by race.
>
> [Ibid.]

We, however, reversed the Division's finding that the fire department's facilities constituted a public accommodation. Ibid.  We wrote:

> We are not persuaded that the facilities maintained for the pleasure and sociability of members of the volunteer fire department are the equivalent of facilities maintained for the use of the general public of a personal nature. The facilities of the fire department, as shown by the record here, are maintained for the use of its members and not for the general public. Such facilities are therefore not an accommodation within the meaning of the act.

23

[*Ibid.*]

The other case, <u>Hebard</u>, was decided in 1978.  Caroline Hebard filed a complaint against Basking Ridge Fire Company, No. 1 in the Division on Civil Rights after the fire company denied her application for membership "on the ground that membership was limited exclusively to males."  <u>Hebard</u>, <u>supra</u>, 164 <u>N.J. Super.</u> at 79.  The Division determined the fire company, which in its relation to Basking Ridge was structured similarly to Fire Company No. 2, was both a public accommodation and an employer under the LAD, and had discriminated against Hebard when it denied her membership.  <u>Id.</u> at 80.

We affirmed that decision on appeal, writing, "[t]he company is an 'employer' within the meaning of the law and subject to the provisions thereof relating to employment discrimination.  It is not within the statutory exclusion as a nonprofit social or fraternal club or corporation."  <u>Id.</u> at 83.  We continued:

> Some comment is in order on whether <u>Blair</u>, <u>supra</u>, is determinative of the company's status as an employer under the law.  In <u>Blair</u> the volunteer fire company plainly appeared to be part of the municipal government, and the order apparently was directed to the municipality and the "fire department" as the employer.  <u>See</u> 117 <u>N.J. Super.</u> at 417.  We see no appreciable distinction in this respect between the present case and <u>Blair</u>.

> The company, by virtue of municipal ordinances, is municipal in nature, subject to the township governing body and ordinances. The township provides approximately 20% of the company's funding and provides workers' compensation for the members. These indicia of control, both fiscal and supervisory, warrant the conclusion that the members of the company are, in effect, employees of the township, as well as of the company, notwithstanding the fact that the members are not paid.
>
> [Hebard, supra, 164 N.J. Super. at 83-84.]

In light of our finding that the fire company was an employer subject to the LAD, we did not consider the Division's finding that the fire company was a place of public accommodation under the LAD. Id. at 86.

As far as we are aware, these are the only two cases ever holding that volunteer firefighters are "employees" under the LAD, notwithstanding that they are not paid for their services. For our purposes, we need do no more than point to the differences in the definition of "employee" in the LAD and CEPA to explain why volunteer firefighters might be considered employees under the LAD, but cannot be so considered under CEPA.

We note, however, that the development of the law, both in the area of places of public accommodation, see Dale v. Boy Scouts of Am., 160 N.J. 562, 584-602 (1999), rev'd and remanded on other grounds, 530 U.S. 640, 120 S. Ct. 2446, 147 L. Ed. 2d 554 (2000), and employment, see Thomas, supra, 386 N.J. Super.

25

at 591-600; <u>Pukowsky</u>, <u>supra</u>, 312 <u>N.J. Super.</u> at 184, might suggest that were <u>Blair</u> and <u>Hebard</u> decided today, the result would be the same but the rationale could well be different. The fire companies might be seen as "places" of public accommodation subject to the LAD but not employers of their members. See <u>Frank v. Ivy Club</u>, 120 <u>N.J.</u> 73, 104 (1990) (citing <u>Hebard</u> to support the proposition that "[w]here a place of public accommodation and an organization that deems itself private share a symbiotic relationship, particularly where the allegedly 'private' entity supplies an essential service which is not provided by the public accommodation, the servicing entity loses its private character and becomes subject to laws against discrimination"), <u>cert. denied</u>, 498 <u>U.S.</u> 1073, 111 <u>S. Ct.</u> 799, 122 <u>L. Ed.</u> 2d 860 (1991); <u>see also</u> <u>Nat'l Org. for Women v. Little League Baseball, Inc.</u>, 127 <u>N.J. Super.</u> 522, 531 (App. Div.) ("The statutory noun 'place' (of public accommodation) is a term of convenience, not of limitation."), <u>aff'd</u>, 67 <u>N.J.</u> 320 (1974).  In any event, our review of <u>Blair</u> and <u>Hebard</u> convinces us that neither provides a sound basis to find plaintiff an employee of Fire Company No. 2 under CEPA.

Finally, we end by noting we find no error in Judge Gummer's having relied on the analysis Judge Quinn applied in dismissing a very similar CEPA claim against the same fire

company by another of its members in 2005.  A review of the motion transcript makes perfectly clear that the court was aware of and abided by the strictures of Rule 1:36-3[8] in her treatment of that case.

Judge Quinn's opinion was cited to the court by the fire company, which was a party to the prior case.  Both parties were aware of the opinion and that it was one of a very few opinions, none of them precedential, discussing the treatment of volunteers under CEPA and Pierce.  See, e.g., Versarge v. Twp. of Clinton, 984 F.2d 1359, 1371 (3d Cir. 1993) (affirming summary judgment dismissing Pierce claim on the basis that "New Jersey courts have not expanded this principle to include expulsion from volunteer organizations").

---

[8] The Rule provides:

> No unpublished opinion shall constitute precedent or be binding upon any court. Except for appellate opinions not approved for publication that have been reported in an authorized administrative law reporter, and except to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law, no unpublished opinion shall be cited by any court.  No unpublished opinion shall be cited to any court by counsel unless the court and all other parties are served with a copy of the opinion and of all contrary unpublished opinions known to counsel.
>
> [R. 1:36-3.]

The parties presented their arguments to the court regarding the merits of the rationale in that case, and the court, acknowledging the case was not binding as the unpublished decision of a coordinate trial court, see Brundage v. Estate of Carambio, 195 N.J. 575, 594 (2008); State ex rel. R.M., 343 N.J. Super. 153, 156 (Ch. Div. 2001), expressed its reasons for finding the logic of the opinion persuasive and adopting it. Rule 1:36-3 does not prevent a party from properly calling an unpublished opinion to the attention of the court, see Falcon v. Am. Cyanamid, 221 N.J. Super. 252, 261 n.2 (App. Div.), certif. denied, 108 N.J. 185 (1987), nor prevent the court from acknowledging the persuasiveness of a reasoned decision on analogous facts, see Nat'l Union Fire Ins. Co. of Pittsburgh v. Jeffers, 381 N.J. Super. 13, 18 (App. Div. 2005).[9]

Moreover, because we apply the same standard as the trial judge in our review of a summary judgment, Nicholas v. Mynster, 213 N.J. 463, 478 (2013), and are obliged to construe the meaning of the statute here anew, Zabilowicz v. Kelsey, 200 N.J. 507,

---

[9] By holding the trial court did not err in acknowledging the persuasive logic of an unpublished decision, we do not imply it had any obligation to have considered it. While litigants are free to cite unpublished opinions to the court in accordance with Rule 1:36-3, the court is, of course, free to disregard them. See Sciarrotta v. Glob. Spectrum, 194 N.J. 345, 353 n.5 (2008); Mesivta Ohr Torah of Lakewood v. Twp. of Lakewood, 24 N.J. Tax 314, 332-33 (2008).

A-0354-15T1

512-13 (2009), any error in the court's reliance on an unpublished opinion would be of no moment in any event. Having considered plaintiff's remaining arguments, we find them without sufficient merit to require further discussion here. See R. 2:11-3(e)(1)(E).

Because we conclude plaintiff is not an employee of Fire Company No. 2, its vote to strip plaintiff of his membership in the organization in alleged retaliation for his letters to the fire company's fidelity carrier and Colts Neck's Executive Fire Council, even if true, is not a CEPA violation. Accordingly, we affirm the judgment dismissing the complaint.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0354-15T1