NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2258-19T1

MELISSA KNIGHT,

     Plaintiff-Appellant,

v.

VIVINT SOLAR DEVELOPER, LLC[1]
and PHILIP CHAMBERLAIN,

     Defendants-Respondents.

<table>
<tr><td>APPROVED FOR PUBLICATION<br><br>December 2, 2020<br><br>APPELLATE DIVISION</td></tr>
</table>

Submitted October 7, 2020 – Decided December 2, 2020

Before Judges Fuentes, Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2852-18.

Flitter Milz, PC, attorneys for appellant (Cary L. Flitter, Andrew M. Milz and Jody T. Lopez-Jacobs, on the briefs).

Ballard Spahr, LLC, attorneys for respondent Vivint Solar Developer, LLC (Daniel JT McKenna and Jenny N. Perkins, on the brief).

Montgomery McCracken Walker & Rhoads, LLP, attorneys for respondent Philip Chamberlain (William K. Kennedy and Alexandra S. Jacobs, on the brief).

---

[1] Improperly pled as Vivint Solar.

The opinion of the court was delivered by

ROSE, J.A.D.

In this Law Division action, plaintiff Melissa Knight filed a complaint alleging violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -195, New Jersey Commercial Code, Leases, N.J.S.A. 12A:2A-102 to -109, and common law fraud against defendants Vivint Solar Developer, LLC and its salesperson, Philip Chamberlain.  Defendants thereafter moved to compel arbitration and stay the action.  Relying on our Supreme Court's then-recent decision in Goffe v. Foulke Management Corporation, 238 N.J. 191 (2019), the trial court granted defendants' motion, concluding the arbitrator must decide threshold issues concerning the overall validity of the parties' purported written agreement, which contained the arbitration provision.

Plaintiff now appeals from the court's January 29, 2020 order.  Because it is unclear from the record whether plaintiff agreed to arbitrate disputes under the agreement, we vacate the order and remand for a plenary hearing for the trial court to first make that threshold determination.

A-2258-19T1

I.

We summarize the pertinent facts and procedural history from the record before the trial court. In doing so, we note the facts are largely disputed and otherwise undeveloped.

Seeking to reduce her energy costs, plaintiff contacted Vivint and inquired about its solar panel service. In April 2016, Vivint sent Chamberlain to plaintiff's home to discuss its services. Plaintiff, a widow, lived in the home with her mother and seven children. According to plaintiff, Chamberlain promised Vivint's solar panels would reduce her energy bills, and that her electric company and Vivint would pay plaintiff for the surplus electricity produced from the solar panels. Plaintiff contends she memorialized that understanding by affixing her signature to the "signature line" of Chamberlain's otherwise blank iPad screen. It is undisputed that Chamberlain never gave plaintiff a hard copy of the agreement that plaintiff believed she signed.

Shortly after Vivint installed the solar panels on the roof of her home in early 2017, plaintiff "notic[ed] outrageous withdrawals from [her] checking account in amounts [she] could not afford." Upon receiving "harassing" collection calls from Vivint, plaintiff retained counsel to represent her interests.

A-2258-19T1

In March 2017, Vivint sent plaintiff's attorney a copy of its Residential Solar Power Purchase Agreement (RSPPA), dated August 2, 2016. The RSPPA listed as customers plaintiff and James Reilly, who had sold the home to plaintiff and her then-husband, James Knight, in 2008. The last page of the seventeen-page RSPPA contains the purported signatures of plaintiff and Reilly; a box above their names contains a checkmark, indicating the customers' assent to arbitration.[2] Plaintiff insists she did not sign the RSPPA, which contains the arbitration provision at issue on this appeal.

Beginning on the bottom of page ten of the RSPPA, the arbitration provision spans to the top of the page twelve. The "Scope of th[e] Arbitration Provision" is set forth on page eleven and provides, in pertinent part:

> Either You or We may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy arising out of or relating to (i) any aspect of the relationship between You and Us, whether based in contract, tort, statute, or any other

---

[2] It is undisputed that Reilly neither was present during plaintiff's 2016 meeting with Chamberlain nor otherwise involved in the transaction between the parties. When deposed, Chamberlain stated Vivint's computer program "automatically populate[d]" the agreement with the potential owners of the residence, and Chamberlain assumed Reilly – the name automatically inserted by the system – was Knight's husband. According to plaintiff's merits brief, Reilly filed a federal lawsuit alleging "theft of credit identity" against Vivint based on its actions in the present matter. See Reilly v. Vivint Solar, Inc., No. 1:18-cv-12356 (NLH-JS) (D.N.J. June 8, 2020).

4                                                                          A-2258-19T1

legal theory; (ii) this Agreement or any other agreement concerning the subject matter hereof; (iii) any breach, default, or termination of this Agreement; and (iv) the interpretation, validity, or enforceability of this Agreement, including the determination or the scope or applicability of [the arbitration provision] (each a "Dispute"). Any questions about whether any Dispute is subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

Plaintiff filed this civil action the following year.

In November 2018, a different Law Division judge denied without prejudice Vivint's initial motion to compel arbitration. The motion judge was unable to "determine whether or not the arbitration clause ought to be enforced." Accordingly, the judge ordered limited discovery regarding the signing of the RSPPA and "the validity of the . . . arbitration clause," which would "turn on that." In reaching his decision, the judge noted the "number of lawsuits" filed against Vivint and its "admissions" in those matters.

Inexplicably – more than four months later – Vivint disclosed another RSPPA, purportedly signed by plaintiff. Dated April 11, 2016, this RSPPA is identical to the August 2, 2016 version, but only identifies Reilly as the customer. Plaintiff's purported signature is affixed above Reilly's printed name on the last page of the April 11, 2016 RSPPA, but her name is not printed on the document. Similar to the first RSPPA, the August 2, 2016 RSPPA contains a

checkmark above plaintiff's alleged signature, indicating the customer's assent to arbitration.

The parties dispute whether Chamberlain displayed the text of either RSPPA on his iPad or otherwise reviewed its terms with plaintiff during their April 2016 meeting at her home. In her November 21, 2018 sworn statement in opposition to Vivint's initial motion to compel arbitration, Knight asserted: Chamberlain "never showed me any contract documents in paper or on the iPad, nor did he mention a contract." When deposed, Chamberlain countered he "thoroughly" reviewed the RSPPA with plaintiff, but acknowledged his iPad only displayed the signature line of the agreement. Chamberlain admitted he intentionally listed a variation of plaintiff's email address on the RSPPA, thereby acknowledging the document was not emailed to plaintiff.

According to plaintiff, there were no "check boxes on the iPad" and "Chamberlain never showed me any arbitration clause or mentioned it in any way." Chamberlain generally stated the RSPPA "is discussed with the homeowner in full" and the "homeowner" would have checked the boxes above the signature line.

A-2258-19T1

In July 2019 – one month after the Supreme Court decided <u>Goffe</u> – Vivint "renewed" its motion to compel arbitration[3] and filed a simultaneous summary judgment motion.[4] At the outset of argument on October 25, 2019, the trial court indicated it had reviewed the previous judge's oral decision, which denied Vivint's motion to compel arbitration without prejudice, and the Supreme Court's holding in <u>Goffe</u>. The trial court then set forth its understanding of the <u>Goffe</u> decision:

> Now in my reading of this, and I'm not trying to make this simplistic because it's . . . an important case to everyone, but <u>Goffe</u> seems to be on all fours with this case and it . . . basically [states] a case gets arbitrated when it's a claim [of] fraud [in] the contract. If it's a question of the formation of the arbitration clause then the courts hear it. And I think <u>Goffe</u> couldn't be clearer . . . on that issue. . . . There's no attack on the language of the arbitration clause here. It's whether this agreement was lawful . . . . The arguments made by . . . plaintiff that it was done on [Chamberlain's] iPad, she didn't review it, she didn't get copies of the e-mails [because Chamberlain varied her email address.] . . . She never got to approve the cancellation. She didn't understand the contract. It wasn't explained to her.

---

[3] Vivint apparently annexed the April 11, 2016 RSPPA as an exhibit to its motion.

[4] Chamberlain did not join Vivint's motion to compel arbitration, but his attorney asserted during argument that plaintiff's claims against Chamberlain would be sent to arbitration if the arbitration provision is enforced. Chamberlain also filed a summary judgment motion.

A-2258-19T1

And this certainly doesn't go to whether the arbitration clause is valid. It goes to whether the contract is valid. And <u>Goffe</u> further goes [on] to explain the distinctions between the two. . . . [Plaintiff's] challenge is [to] the contract as a whole rather than the arbitration agreement.

The court then afforded the parties a full opportunity to present argument.

In her effort to distinguish the facts of <u>Goffe</u> from the present matter, plaintiff argued, among other things:

> Here, in this case, <u>we have a complete factual dispute about what was signed, if anything was signed.</u> The agreement proffered by . . . defendants here is a forgery and a fraud. We have direct testimony on that, that it wasn't signed by . . . plaintiff . . . . [T]he contract is in the name of a man named James Reilly. Miss Knight's name appears nowhere on this contract that . . . defendants seek to compel arbitration under.

> So there's a clear fact dispute here over what, if anything, was signed.

> In <u>Goffe</u>, it's important to note . . . that there was a clear and conspicuous arbitration agreement at issue. <u>Here, no arbitration agreement was presented at all to anyone, let alone Miss Knight.</u> This contract was created fraudulently outside of her presence. She never saw any of this contract.

> . . . .

> Now defendants are trying to say this "x" with a signature line [on the RSPPA] is the agreement to . . . a twenty-year contract in somebody else's name that

[plaintiff] never saw.  There's no way under these facts that Miss Knight had an understanding of this contract, the arbitration agreement within there, because it was all hidden from her.

[(Emphasis added).]

Relying on our Supreme Court's decision in Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430 (2014), plaintiff further argued:  "[A]rbitration requires mutual assent.  It requires the parties to have an understanding of the terms to which they have agreed . . . .  Goffe doesn't change that in any respect."  Plaintiff elaborated:

In Goffe, there was a signed agreement and there was no dispute about that.  Here we don't have a signed agreement.  We have an agreement in a total stranger's name with a forged signature on it.

So that threshold issue of whether there is any valid agreement to arbitrate, any valid agreement in general cannot be met here.  Miss Knight can't have her right to be in court waived on the basis of something she had never seen and that . . . defendants have admittedly hidden from her.

[(Emphasis added).]

The trial court, however, was not persuaded.  Citing Goffe, the court reasoned "the mutual assent issue [here] was to the entire contract."  As such, "an arbitrator must resolve plaintiff's claims about the validity of the sales contract, as well as any arbitrator [sic] claims that plaintiff may choose to raise."

Accordingly, the court granted the motion to compel arbitration and denied summary judgment.

One week later, the court sua sponte ordered briefing and a rehearing on December 13, 2019 to reconsider Vivint's motion to compel arbitration in light of a then-recent unpublished opinion from this court,[5] because that opinion "discuss[ed] the enforcement of [an] arbitration clause with facts similar to the facts in [the present] case."

On the return date of the court's reconsideration motion, before hearing from the parties, the court noted its concerns about limiting its prior ruling to "a single sentence" in the Goffe opinion, i.e., "if the contract's in dispute, you're testing the whole thing, it goes to an arbitrator. . . . If you're just contesting the arbitration clause, then [the court] hear[s] it." In response, plaintiff argued she could not "have agreed to arbitration when she had no notice of the arbitration agreement whatsoever[.]" Pointing to her deposition testimony, plaintiff stated

_____

[5] An unpublished opinion has no precedential value "and except to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law, no unpublished opinion shall be cited by any court." R. 1:36-3. A court may only "acknowledg[e] the persuasiveness of a reasoned decision on analogous facts." Sauter v. Colts Neck Volunteer Fire Co. No. 2, 451 N.J. Super. 581, 600 (App. Div. 2017).

"she did not check any boxes" on the RSPPA, including the "box that said that she agreed to the arbitration clause within the [RSPPA]."

The court again rejected plaintiff's argument, concluding "this is a classic bait and switch [case] just like Goffe," noting defendants "made promises; they got her to sign." Recognizing plaintiff "attempt[ed] to distinguish [her matter] by indicating that the arbitration agreement is almost like separately contested because she didn't sign it, the box wasn't checked," the court found that was "a factual issue," which is not "a distinction that Goffe makes." Accordingly, the court entered the order under review, compelling arbitration and staying the action.[6] This appeal followed.

On appeal, plaintiff raises several overlapping arguments for our consideration. Distilled to their essence, plaintiff maintains the Supreme Court's decision in Goffe does not abrogate the trial court's function to first ascertain whether the parties mutually assented to arbitrate their disputes. Plaintiff reiterates her argument that defendants committed fraud in the execution and formation of the RSPPA. She further argues she specifically attacked the

---

[6] The order also directs the arbitrator to "decide the threshold issue of whether an agreement to arbitrate was formed and whether that agreement to arbitrate is enforceable. If the arbitrator finds in the affirmative, the arbitrator shall decide the merits of the parties' claims. If the arbitrator finds in the negative, the matter may return to th[e] [c]ourt."

formation of the arbitration clause through her denial that she checked any boxes on Chamberlain's iPad, including the checkmark in the box assenting to arbitration. She therefore contends she lacked notice of the RSPPA's arbitration provision and did not agree to its terms.

## II.

We exercise de novo review of a trial court's order compelling arbitration. Goffe, 238 N.J. at 207; see also Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020). "In reviewing such orders, we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). That preference, however, "is not without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001).

Under section two of the Federal Arbitration Act (FAA), 9 U.S.C. § 1 to 16, states may regulate arbitration agreements under general contract principles. Atalese, 219 N.J. at 441 (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)). Accordingly, arbitration clauses may be invalidated on grounds existing at law or equity that call for the revocation of any contract. Ibid.

An arbitration agreement must be the product of mutual assent. Id. at 442 (quoting NAACP of Camden Cty. East v. Foulke Mgmt. Corp., 421 N.J. Super.

404, 424 (App. Div. 2011)). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." Ibid. "The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993). Indeed, any contractual waiver of rights, including arbitration provisions, must reflect that the parties have clearly and unambiguously agreed to the terms. Atalese, 219 N.J. at 443. The parties must have full knowledge of their rights and show an intent to surrender those rights. Id. at 442-43. That did not occur here.

As stated, in granting Vivint's motion, the trial court's decision is rooted in its interpretation of Goffe. While we agree the court was, of course, bound by Supreme Court precedent, we part company with the court's conclusion that the present matter is "on all fours" with Goffe. In the two actions consolidated in that case, the plaintiffs brought various fraud allegations against the defendant car dealerships. 238 N.J. at 202. Both plaintiffs opposed the defendant's motions to compel arbitration; both plaintiffs claimed they had been fraudulently induced to enter into their contracts with the dealerships. Id. at 202-03.

In our Goffe published opinion, we reversed the trial courts' decisions compelling arbitration. 454 N.J. Super 260, 284 (App. Div. 2018). In doing so, we held that the formation of a contract is a threshold issue to be decided by the trial court. Id. at 277-78, 283-84. The Supreme Court disagreed and reversed. Writing for the Court, Justice LaVecchia observed that the plaintiffs sought

> to distinguish their claims by emphasizing their position that there was no mutual assent to arbitrate their claims because the arbitration agreements they signed were "the product of fraud and trickery . . . and were not voluntarily and knowingly agreed to." However, the disputed facts that plaintiffs allege go to whether the dealerships performed a bait-and-switch related to enticing plaintiffs to enter into the contract as a whole . . . . They have not raised a specific claim attacking the formation of the arbitration agreement that each signed.
>
> Moreover, the argument that either plaintiff did not understand the import of the arbitration agreement and did not have it explained to her by the dealership is simply inadequate to avoid enforcement of these clear and conspicuous arbitration agreements that each signed.
>
> [238 N.J. at 212 (emphasis added).]

The Court thus distinguished an arbitration agreement in a previous matter it had considered, again observing:

> Unlike the <u>Guidotti</u>[7] plaintiff, <u>they do not claim not to have seen the arbitration agreement, for their signatures are on the written documents.</u> They do not dispute the validity of the arbitration agreement or its delegation clause other than to say that it is invalid as a result of the invalidity of the contract as a whole.
>
> [<u>Id.</u> at 215 (emphasis added).]

Having reviewed the record, we conclude there exist questions of fact concerning the mutuality of assent to the arbitration provision, which is necessary to bind both parties to arbitration. Similar to the plaintiffs in <u>Goffe</u>, Knight alleges the RSPPA "as a whole" is invalid. However, in sharp contrast to the plaintiffs in <u>Goffe</u>, Knight challenges the arbitration provision. She asserts Chamberlain neither displayed the provision nor explained its legal ramifications to her at any time. Crucially, plaintiff denies checking any boxes on Chamberlain's iPad "blank" screen, including the box, which would otherwise indicate her assent to be bound by the terms of an arbitration provision. In that regard, she did not "sign" the arbitration agreement. Indeed, plaintiff claims she did not receive the first RSPPA until eleven months after she agreed to the installation of Vivint's solar panels.

---

[7] <u>Guidotti v. Legal Helpers Debt Resolution, L.L.C.</u>, 716 F.3d 764 (3d Cir. 2013).

Notably, plaintiff asserted – from the outset of the litigation – that she never checked any boxes on the RSPPA, including the arbitration provision. We therefore reject Vivint's argument that plaintiff only specifically challenged the arbitration provision in her reply brief on reconsideration. In any event, in its ultimate decision, the trial court specifically noted there existed "a factual issue" as to whether plaintiff checked the arbitration box.

On the other hand, Chamberlain asserts plaintiff "signed the RSPPA and every agreement on there." He disputes that plaintiff signed a blank screen on his iPad. And Chamberlain claims Vivint's RSPPAs "[are] discussed with the homeowner in full" and the "homeowner" would have checked the boxes above the signature line. Notably, Chamberlain, however, does not claim he provided plaintiff with an electronic or hard copy of the RSPPA at any time.

In sum, the arbitrator cannot decide the validity of the RSPPA, unless and until the trial court initially resolves the issues of fact pertaining to the formation of the arbitration provision, and determines the parties agreed to arbitrate their claims. Absent that agreement, the arbitrator is not empowered to determine plaintiff's issues concerning the formation and execution of the RSPPA. In that regard, we are unpersuaded by defendants' argument that because the arbitration agreement is contained within the RSPPA, which plaintiff also challenges, the

A-2258-19T1

arbitrator must determine its validity.  In our view, that procedure puts the cart before the horse.  We hasten to add we offer no view on the outcome of the remand proceedings.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2258-19T1