875 A.2d 898

ANDREW N. YURICK, PLAINTIFF–RESPONDENT, v. STATE OF NEW JERSEY; THE HONORABLE JAMES E. MCGREEVEY, GOVERNOR, STATE OF NEW JERSEY; AND DAVID SAMSON, ATTORNEY GENERAL, STATE OF NEW JERSEY AND GLOUCESTER COUNTY BOARD OF CHOSEN FREEHOLDERS, JOINTLY AND SEVERALLY, AND IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES, DEFENDANTS–APPELLANTS.

Argued March 29, 2005—Decided June 22, 2005.

*Larry R. Etzweiler,* Senior Deputy Attorney General, argued the cause for appellants State of New Jersey, Honorable James E. McGreevey and David Samson (*Peter C. Harvey,* Attorney General of New Jersey, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel).

*William M. Tambussi* argued the cause for appellant Gloucester County Board of Chosen Freeholders (*Brown & Connery,* attorneys; *Mr. Tambussi* and *Ila Bhatnagar,* on the briefs).

*Linda Wong* argued the cause for respondent (*Wong Fleming,* attorneys; *Ms. Wong* and *Henry Oh,* on the brief).

Justice LaVECCHIA delivered the opinion of the Court.

This is an unusual case. The plaintiff, a former county prosecutor, asserts that the Governor, the Attorney General and the State of New Jersey violated the Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19-1 to -8, when they exercised their statutory power to supersede him as prosecutor after the expiration of his five-year term and that county officials similarly violated CEPA when they underfunded his budget. In respect of the latter claim, plaintiff notably never availed himself of the statutory process designed to resolve budget disputes through a proceeding before a neutral decision-maker, the assignment judge. For the reasons that follow, we find that this constitutional officer has no cognizable CEPA claim against those state officials for the invocation of statutory supersession powers. We similarly find he has failed to state a CEPA cause of action against county officials for an allegedly inadequate budget in the face of his failure to invoke the very statutory process designed to prevent that eventuality.

Andrew N. Yurick, II, the former Gloucester County Prosecutor who brought this CEPA action against the State of New Jersey, Governor James E. McGreevey, Attorney General David Samson, and the Gloucester County Board of Chosen Freeholders, had his claim dismissed by the trial court. The Appellate Division re-

versed that determination. This appeal comes before us based on the dissent of Judge Hoens, who found that plaintiff neither had standing to pursue a CEPA claim nor had stated a claim cognizable under CEPA. As we agree that plaintiff has not stated a claim under CEPA, we reverse the judgment of the Appellate Division.

I.

In 1997, plaintiff was nominated as Gloucester County Prosecutor by then-Governor Christine Todd Whitman and was confirmed by the New Jersey State Senate. Pursuant to Article 7, Section 2, Paragraph 1 of the New Jersey Constitution and *N.J.S.A.* 2A:158–1, plaintiff was appointed to serve a term of five years, and until the appointment and qualification of a successor.

Plaintiff's five-year term ended on January 31, 2002. On February 1, 2002, Governor James E. McGreevey sent a letter to Attorney General David Samson, requesting that, pursuant to *N.J.S.A.* 52:17B–106, the Attorney General "supersede the Gloucester County Prosecutor [Andrew N. Yurick, II] for the purpose of prosecuting all of the criminal business of the State in Gloucester County." In the letter, Governor McGreevey stated that plaintiff's removal was necessary because a January 2002 audit "outlined a series of deficiencies in the management of that office" that "raised a significant concern about the integrity of the criminal justice system in that county and whether the citizens of Gloucester County have access to the full and fair administration of justice." The Governor instructed that the supersedure should "commence immediately" upon Samson's receipt of the letter. That day the Attorney General superseded Yurick as the Prosecutor of Gloucester County. In his written notice to Yurick, also dated February 1, 2002, Samson stated that the supersedure was ordered pursuant to a written request by Governor McGreevey, and added that both Samson and the Governor were "sufficiently concerned for the integrity of the criminal justice system that, in order to maintain the public's confidence and ensure the continued

efficient functioning of the prosecutor's office, this supersedure [was] necessary."

In September 2002, plaintiff filed this action against the State of New Jersey, McGreevey, and Samson (collectively, the State), and the Gloucester County Board of Chosen Freeholders.[1] Plaintiff asserted violations of CEPA and of his federal constitutional rights under 42 *U.S.C.A.* §§ 1983 and 1985. He claimed that he was the subject of retaliatory acts by the two groups of defendants.

Specifically, plaintiff alleged that the Freeholders retaliated against him and his office because of his political affiliation, his investigation into alleged corruption and other wrongdoing by individuals politically and personally connected to the Freeholders, and his objection to interference by the Freeholders into his investigation. The retaliatory actions allegedly taken by the Freeholders included refusing to approve essential budgetary items for the Prosecutor's Office, failing to confer with plaintiff in deciding key budgetary matters, reducing the salaries and raises of non-contractual employees within plaintiff's office, and causing the illegal superseding of his position as Prosecutor of Gloucester County. In respect of the State defendants, the complaint alleged that they interfered with the independent powers, duties and functions of plaintiff as the county prosecutor and that the State defendants' actions did not comply with the strict requirements for duly appointing a successor for his office. The complaint also alleged that the Attorney General failed to initiate appropriate action against the County when plaintiff opposed the Freeholders' practices affecting his office, and that the State defendants issued an unsubstantiated and politically motivated report on plaintiff's performance as County Prosecutor.

---

[1] We note that the Law Division transferred venue of this matter to Cumberland County to avoid any potential conflict of interest due to plaintiff's status as the former Prosecutor of Gloucester County.

In lieu of filing an answer, both the State and the Freeholders moved to dismiss the complaint with prejudice. The trial court granted the motions, holding that the complaint failed to state a claim upon which relief could be granted. The court concluded that "CEPA is not intended to protect an employee of [plaintiff's] status" because plaintiff "[was] not the sort of employee who was in fear of losing his position or is considered to be especially vulnerable." The court further held that even if plaintiff could bring a claim under CEPA, the claim would be barred under *Rule* 4:69–6 because plaintiff failed to challenge directly his supersedure by pursuing an action in lieu of prerogative writs within forty-five days of being superseded as Prosecutor of Gloucester County.

A majority of the Appellate Division affirmed the dismissal of plaintiff's federal claims, but reversed the dismissal of the CEPA claims. First, the panel rejected the argument that plaintiff's claims were barred because he did not pursue an action in lieu of prerogative writs within the time limit prescribed by *Rule* 4:69–6. The court concluded that a plaintiff, aggrieved by the actions of State officials, was not precluded from bringing a statutory or constitutional cause of action against those officials for money damages. As for the CEPA claims, the court concluded that the trial court misconstrued the scope of CEPA's applicability as well as its intent. Citing CEPA's purpose to provide broad protection against employer retaliation for employees who act in the public interest, the Court found no basis to conclude that the Legislature intended to preclude a CEPA action brought by a county prosecutor. The panel acknowledged that there may be obstacles to plaintiff's claims when tested by discovery, but held that it was constrained to conclude that plaintiff's complaint stated a claim under CEPA.

Judge Hoens dissented. She found that the statute did not apply to plaintiff because he was not within the class of people that the statute was designed to protect and, in any event, he failed to state a cognizable claim. Four points were advanced in her dissent. First, a county prosecutor is not an "employee" in

the traditional sense applied in CEPA because a county prosecutor has broad statutory powers and the limits on those powers are few. Second, a CEPA cause of action was not meant to be available to the county prosecutor because a county prosecutor is not the type of vulnerable person that requires CEPA's protection. The county prosecutor has the tools within his control to root out wrongdoing, and has no need to "blow the whistle" at all. Third, the "retaliatory acts" alleged by plaintiff were inadequate to state a cause of action under CEPA. And, last, plaintiff's claims constituted "personal" wrongs that were unrelated to any concern for the public good as was envisioned under CEPA. Specifically, the dissent characterized plaintiff's claim as "personal dissatisfaction with a funding decision entrusted by statute to the Freeholders and a choice to supersede that, in the final analysis, was the Governor's to make."

Defendants appealed as of right on the CEPA claims. *R.* 2:2–1.

## II.

The Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19–1 to –8, was enacted on the heels of this Court's seminal decision in *Pierce v. Ortho Pharmaceutical Corp.,* 84 *N.J.* 58, 417 *A.*2d 505 (1980), that recognized the public benefits derived from providing protection to vulnerable employees who have the courage to speak out against or to decline to participate in an employer's actions that are contrary to public policy mandates. The Legislature codified in CEPA its purpose "to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." *Abbamont v. Piscataway Township Bd. of Educ.,* 138 *N.J.* 405, 431, 650 *A.*2d 958 (1994). Thus, CEPA is widely understood as promoting the "strong public policy" of " 'reaffirm[ing] ... this State's repugnance to an employer's retaliation against an employee who has done nothing

more than assert statutory rights and protections.' " *Ibid.* (citation omitted).

■ Specifically, CEPA provides that

[a]n employer shall not take any retaliatory action against an employee because the employee does any of the following:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, . . . ;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer or another employer, with whom there is a business relationship, . . . ;

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;

(2) is fraudulent or criminal; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[*N.J.S.A.* 34:19–3.]

To establish a *prima facie* cause of action under CEPA, a plaintiff must demonstrate that

(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in *N.J.S.A.* 34:19–3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

[*Dzwonar v. McDevitt*, 177 *N.J.* 451, 462, 828 *A.2d* 893 (2003) (citation omitted).]

With that in mind, we turn to the unique setting of plaintiff's CEPA claims.

### III.

### A.

■ In New Jersey, the county prosecutor is constitutionally created and statutorily endowed with powers that arm him or her to perform wide ranging duties. *See Wright v. State*, 169 *N.J.*

422, 437, 778 *A.*2d 443 (2001) (noting that county prosecutor is "a constitutionally established office"). Generally stated, the county prosecutor is responsible for the prosecution of crimes committed in the county, subject to law and to action by the grand jury. *See State v. Josephs,* 79 *N.J.Super.* 411, 415, 191 *A.*2d 775 (App.Div. 1963) (citing *N.J.S.A.* 2A:158–4). County prosecutors are "vested with broad discretionary powers," *In re Ringwood Fact Finding Comm.,* 65 *N.J.* 512, 526, 324 *A.*2d 1 (1974), including the authority to use " 'all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws.' " *Rolleri v. Lordi,* 146 *N.J.Super.* 297, 305, 369 *A.*2d 952 (App.Div. 1977) (quoting *N.J.S.A.* 2A:158–5).

 County prosecutors are expected to interact freely with county and state officials in the performance of their respective responsibilities. As we have noted before, "[t]here is no ordinary chain of command between the attorney-general and the county prosecutors," *Morss v. Forbes,* 24 *N.J.* 341, 369, 132 *A.*2d 1 (1957), and the State is not "responsible for the daily functioning of the prosecutor's office." *Id.* at 371, 132 *A.*2d 1. Nonetheless, "the county prosecutor's law enforcement function . . . remains at all times subject to the supervision and supersession power of" the State. *Wright, supra,* 169 *N.J.* at 452, 778 *A.*2d 443. Under *N.J.S.A.* 52:17B–103, the Attorney General is authorized to "maintain a general supervision over . . . county prosecutors with a view to obtaining effective and uniform enforcement of the criminal laws throughout the State." The "general supervision" power permits the Attorney General, in the best interests of the State, to participate in, initiate, or supersede a county prosecutor in respect of any investigation, criminal action or proceeding. *N.J.S.A.* 52:17B–107. Thus, " 'the Attorney General's supersedure power appears to have been bestowed with the understanding that it was intended to ensure the proper and efficient handling of the county prosecutors' 'criminal business.' ' " *Wright, supra,* 169 *N.J.* at 438, 778 *A.*2d 443 (quoting *Coleman v. Kaye,* 87 *F.*3d 1491, 1501 (3d Cir.1996), *cert. denied,* 519 *U.S.* 1084, 117 *S.Ct.* 754, 136

*L.Ed.*2d 691 (1997)). Moreover, "[w]henever requested in writing by the Governor, the Attorney General shall ... supersede the county prosecutor." *N.J.S.A.* 52:17B–106. The Governor is also given the power to remove the county prosecutor from office "for cause after a public hearing and upon due notice and an opportunity to be heard in his defense." *N.J.S.A.* 52:17B–110.

■ In respect of the county prosecutor's relationship with county officials, "the county prosecutor's law enforcement function is unsupervised by county government or any other agency of local government." *Wright, supra,* 169 *N.J.* at 452, 778 *A.*2d 443. However, the county exercises considerable control over the fiscal operations of the county prosecutor's office. *Id.* at 440, 778 *A.*2d 443. The county pays the salary established by law for the county prosecutor, *N.J.S.A.* 2A:158–13, and sets the salaries of key members of the county prosecutor's staff. *N.J.S.A.* 2A:158–15.3. Additionally, the county board of chosen freeholders appropriates the funds expended by the county prosecutor in investigating and prosecuting crime. *N.J.S.A.* 2A:158–7. And, the county board of chosen freeholders has the authority to request the Attorney General to exercise his supersedure powers over a county prosecutor. *N.J.S.A.* 52:17B–106.

### B.

Although the dissent below addressed the broader issue of a county prosecutor's standing to bring a CEPA cause of action, we find it unnecessary to decide that question. Because we are persuaded that on the specific facts here we do not have the type of alleged "retaliatory action" that was made actionable by CEPA, we conclude that plaintiff has failed to state a claim cognizable under CEPA.

■ Plaintiff attempts to characterize the inadequacies that he perceived in the salaries established by the county freeholders for staff in his office, as well as the overall adequacy of the budget enacted for his office, as the equivalent of "retaliatory action"

under CEPA.[2] The comparison fails, however, when scrutinized in the context of the legislative budget process that pertains to the county prosecutor's office. *See N.J.S.A.* 2A:158–7; *see also In re Bigley,* 55 *N.J.* 53, 259 *A.*2d 213 (1969). The statutory scheme contemplates that a county prosecutor will meet with county officials in an attempt to persuade the county as to the needs of the office and, if persuasion does not succeed, will consider mediation on points of fiscal disagreement. *Id.* at 61–62, 259 *A.*2d 213. If the county's proposed funding of the budget is not resolved to the prosecutor's satisfaction, the Legislature provided a mechanism for the prosecutor to bring an independent arbiter into the process to hear the prosecutor's complaint of fiscal inadequacy—to wit, the assignment judge of the vicinage. Specifically, *N.J.S.A.* 2A:158–7 provides that

[a]ll necessary expenses incurred by the prosecutor for each county in the detection, arrest, indictment and conviction of offenders against the laws shall, upon being certified to by the prosecutor and approved, under his hand, by a judge of the superior court, be paid by the county treasurer whenever the same shall be approved by the board of chosen freeholders of such county. *The amount or amounts to be expended shall not exceed the amount fixed by the board of chosen freeholders in its regular or emergency appropriation, unless such expenditure is specifically authorized by order of the assignment judge of the superior court for such county.*

[ (Emphasis added).]

The statute commits to the assignment judge the authority to see to it that the needs of the county prosecutor are met if they are not provided for by the county freeholders. *Bigley, supra,* 55 *N.J.* at 56, 259 *A.*2d 213. The budget is not set until the assignment judge decides the matter, unless the prosecutor sooner ends the process by abandoning it.

Thus, the Legislature created a process whereby a prosecutor would have an adequate budget established for his or her office each fiscal year. Here, plaintiff did not complete that process. Plaintiff never made a *Bigley* application in respect of his budget.

---

2 "Retaliatory action" is defined in CEPA as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." *N.J.S.A.* 34:19–2(e).

The prosecutor bears the responsibility to bring such an application if he or she continues to believe that the budget for the county prosecutor's office is inadequate. That is the case also for plaintiff's claim of inadequacy in the setting of salaries for key personnel in his office, which should have been dealt with as part of the budget-setting process.

In the face of plaintiff's abandonment of the legislatively created budget process, we cannot conclude that plaintiff has pled a *prima facie* claim of retaliatory action under CEPA in respect of the funding of his office by the County Freeholders. We reject the bald contention that the inadequacy that plaintiff perceived in his budget overall, or in salaries specifically—untested by an application before a neutral assignment judge in completion of the statutory process for establishing the budget for his office— constitutes a *prima facie* claim of "retaliatory action." We cannot presume, as plaintiff would have us presume, that the budget was inadequate. That core factual failing dooms plaintiff's CEPA cause of action against the County Freeholders. Plaintiff has not pled any cognizable retaliatory action by the County Freeholders.

▆▆▆ Similarly, plaintiff claims that his supersedure by State defendants constituted "retaliatory action" under CEPA. As a matter of law, we do not agree. We do not regard the diminution in power of this constitutional officer, which was accomplished pursuant to a legislative supersession process involving the Governor and the Attorney General at the expiration of plaintiff's five-year term of office, to be a wrong cognizable under CEPA. Pursuant to the supersession, plaintiff technically continued to hold his office; however, he no longer had the power of control over the day-to-day operations of the prosecutor's office and the legislative process permitted the wresting of that control from him. *See N.J.S.A.* 52:17B–106 (stating that upon supersedure, "the county prosecutor ... shall exercise only such powers and perform such duties as are required of [him] by the Attorney General"). Although plaintiff would have been entitled to be paid for any services that were required of him, see *Winne v. County of*

*Bergen,* 21 *N.J.* 311, 323, 121 *A.*2d 733 (1956), it appears that the Attorney General did not require plaintiff to perform any duties following the supersedure. The Attorney General took over the operation of the county prosecutor's office.

Plaintiff may have hoped to remain as a holdover officer in charge of the operation of his office at the conclusion of his five-year term, but he had no reasonable expectation that he would be permitted to do so. Supersession must occur when the Governor requests it, and the Governor has wide discretion in the exercise of that power. *Compare N.J.S.A.* 52:17B–106 (authorizing supersession when in furtherance of "[the] interests of the State") *with N.J.S.A.* 52:17B–110 (authorizing removal of prosecutor "for cause"). That said, we decide only this case and do so on the basis of the specific facts involved. We refuse to equate the fact that the Attorney General took over operation of the Gloucester County Prosecutor's Office at the expiration of the prosecutor's term of office with "retaliatory action" constituting an element in a CEPA cause of action. Supersession simply is not the equivalent of removal from office under *N.J.S.A.* 52:17B–110.

In sum, we hold that the legislative process for supersession was followed and its execution in respect of plaintiff does not constitute "retaliatory action" creating a cognizable cause of action under CEPA.

## IV.

The judgment of the Appellate Division is reversed and the matter remanded to the trial court for reinstatement of judgment in favor of defendants.

*For reversal/remandment/and reinstatement*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, and RIVERA-SOTO—5.

*Opposed*—None.