**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3152-22

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

FRANK MCVEY,

    Defendant-Respondent.

_____

Argued June 4, 2024 – Decided July 2, 2024

Before Judges Gooden Brown, Puglisi and Haas.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 21-10-0317.

Bethany L. Deal, Deputy Attorney General, argued the cause for appellant (Anthony A. Picione, Acting Warren County Prosecutor, attorney; Anthony J. Robinson, First Assistant Prosecutor, of counsel and on the brief).

Michael Critchley argued the cause for respondent (Critchley, Kinum & Luria, LLC, attorneys; Michael Critchley, Amy Luria, and Armando B. Suárez, on the brief).

Bethany L. Deal, Deputy Attorney General, argued the cause for amicus curiae Attorney General (Matthew J. Platkin, Attorney General, attorney; Bethany L. Deal, of counsel and on the brief).

Matthew S. Adams argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Fox Rothschild LLP, attorneys; Matthew S. Adams, Marissa Koblitz Kingman, and Krista N. Hartum, on the brief).

PER CURIAM

By leave granted, the State appeals from the February 8, 2023, Law Division order disqualifying the Warren County Prosecutor's Office (WCPO) from representing the State in the criminal prosecution of Frank McVey based on a personal conflict of interest of then Warren County Prosecutor (WCP) James Pfeiffer. The State also appeals from the May 8, 2023, order denying reconsideration of the disqualification. The disqualification order effectively required the Attorney General (AG) to supersede the WCP in prosecuting McVey pursuant to N.J.S.A. 52:17B-107(a). Based on the events that have transpired since we granted the State's motion for leave to appeal, we dismiss the appeal as moot.

Frank McVey is a local public official of Phillipsburg, having served as a council member since 2018, council vice president since 2020, and, most

recently, as its president in 2021. On November 8, 2021, McVey was indicted and charged with two counts of second-degree official misconduct and one count of fourth-degree criminal coercion. The charges stemmed from two separate events, one occurring in 2020 and the other in 2021.

The first event involved a threatening email allegedly sent by McVey to Mayor Todd Tersigni on December 29, 2020. Despite having known each other since high school and served on the Phillipsburg council together since McVey joined in 2018, McVey and Tersigni were political rivals. In the December 2020 email, McVey allegedly told Tersigni:

> I'm not quite sure how things will work out on our reorganizational meeting, but assuming if I was to elevate my current vice president position to president, let this email serve notice.
>
> At no point in time will you approach the town clerk, or any employee within her supervision purview, without approaching me first. If I even hear an inkling of a conversation without authorization of the council president, I will be sitting in your office within [thirty] minutes.

McVey allegedly added that Tersigni should not complain to the township attorney about the email or McVey would "plaster all over social media how [Tersigni had] beaten women to submission to the point of reaching the front page of the Express Times."

3

The second event involved a series of email messages between McVey and certain local government officials that escalated to an allegedly inappropriate use of the 9-1-1 system. The second incident began when McVey allegedly sent an email at 9:41 a.m. on August 13, 2021, to the Phillipsburg Business Administrator requesting "all calls for service, operations and/or accident reports" on a town-owned vehicle driven by Mayor Tersigni, claiming that the inquiry was related to "possible outside insurance inquiries." By noon the same day, the Business Administrator relayed McVey's inquiry to Police Chief Robert Stettner and Police Captain Michael Swick, requesting a response.

When no response was forthcoming, at 4:42 p.m. the same day, McVey allegedly sent another email to the Business Administrator, Stettner, and Swick, copying Tersigni and others, asking, "[w]here do we stand with this?" At 5:34 p.m., McVey allegedly followed up again, writing:

> Maybe most of you (not the cc) work Monday through Friday[,] 7 to 3[,] but I don't with this position. Somebody give me an answer and respect the $.35 an hour that I'm getting for this job. If I don't receive correspondence by 6 [p.m.] I will be calling 911 asking for an officer to come to my house and to give me an answer on this inquiry.

As promised, at 6:12 p.m., McVey allegedly dialed 9-1-1, "informed the dispatcher that the call was 'non-emergency,'" "identified himself,"

4

and "request[ed] a welfare check by the Phillipsburg Police on . . . Chief [Stettner] and Mayor [Tersigni] as he had not heard from them in twelve hours." When Lieutenant Sandor Gal responded, McVey reiterated the reasons for his welfare check request, including that he was "'concerned for'" Chief Stettner and Mayor Tersigni. Gal confirmed that Stettner and Tersigni were well, and Stettner referred the matter of the 9-1-1 call to WCP Pfeiffer who "asked to see everything." Stettner delivered the materials to Pfeiffer as requested on August 16, 2021.

After reviewing the referral but prior to any investigation, Pfeiffer recused himself due to a personal conflict of interest, and delegated prosecutorial authority to then First Assistant Prosecutor (FAP) Anthony Robinson, who assumed complete supervision of the case. Pfeiffer recused himself because approximately fifteen years earlier, when he had been a partner at a private firm, he had represented Tersigni in a domestic violence matter. Once the domestic violence matter was terminated with the dismissal of the temporary restraining order (TRO) filed against Tersigni, the relationship between Tersigni and Pfeiffer ended.

After Robinson assumed responsibility for the handling of the case, on August 17, 2021, he approved the issuance of a complaint-summons charging

McVey with fourth-degree false public alarms, N.J.S.A. 2C:33-3(e) ("A person is guilty of a crime of the fourth degree if the person knowingly places a call to a 9-1-1 emergency telephone system without purpose of reporting the need for 9-1-1 service."). Following a complete investigation, a proposed five-count indictment against McVey was presented to the Warren County Grand Jury.

The proposed indictment charged McVey with second-degree official misconduct in connection with the December 29, 2020, email, N.J.S.A. 2C:30-2(a) (count one); second-degree official misconduct in connection with the August 13, 2021, 9-1-1 call, N.J.S.A. 2C:30-2(a) (count two); second-degree pattern of official misconduct related to both events charged in counts one and two, N.J.S.A. 2C:30-7(a) (count three); fourth-degree criminal coercion related to the December 29, 2020, email, N.J.S.A. 2C:13-5(a)(7) (count four); and fourth-degree false public alarms pertaining to the August 13, 2021, 9-1-1 call, N.J.S.A. 2C:33-3(e) (count five). On November 8, 2021, the grand jury indicted McVey on counts one, three, and four, and returned a no bill on counts two and five. Count three, charging a pattern of official misconduct, was dismissed by the trial court on the State's motion on the ground that it was legally unsustainable.

A-3152-22

After discovering WCP Pfeiffer's prior relationship with Tersigni, McVey moved to disqualify the WCPO, arguing the prior relationship created a conflict of interest that "tainted the entire WCPO's investigation." McVey also moved to dismiss the indictment. In opposition, the State confirmed Pfeiffer's prior representation of Tersigni, but argued that Pfeiffer's early recusal and assignment of the case to FAP Robinson did not taint the entire thirteen-member WCPO.

Following oral argument, on February 8, 2023, the motion judge issued an order and written opinion granting McVey's motion to disqualify the WCPO, but denying McVey's motion to dismiss the indictment.[1] As to the former, the judge ordered that the WCPO was disqualified, and directed that the prosecution be handled by the Division of Criminal Justice in the AG's office or a sister County Prosecutor's Office. The judge reasoned:

> [McVey] has appropriately pointed to a conflict of interest regarding a former relationship between the Prosecutor and the Mayor and argues the Prosecutor's individual recusal from the matter is not enough. This court agrees. While the conflict of interest pertaining to the Prosecutor's former representation of the Mayor is admittedly remote, since it occurred [fourteen] years ago, the Prosecutor's former representation of the Mayor causes this court (and presumably the public), to

---

[1] The motions were transferred sua sponte to the Somerset County Vicinage for adjudication.

A-3152-22

question whether the decision to prosecute [McVey] appears politically motivated.

Addressing the circumstances of the recusal, the judge stated,

This court is mindful that the appearance of impropriety does not absolutely govern here, but there is certainly a factual question of when and how the Prosecutor recused himself and delegated prosecutorial authority to the First Assistant. Indeed, the Prosecutor admitted to having reviewed all the material only to have a criminal complaint follow one day after the delegation. A legitimate question arises as to whether the First Assistant could truly undertake an impartial material review of this politically charged complaint in one day.

Although McVey alleged no specific conflict against FAP Robinson before the trial court, included in the record on appeal are several communications between Robinson and Tersigni, including "approximately 150 text messages . . . and over 130 emails" exchanged between July 13, 2021, and March 16, 2023 (emphasis omitted). In a couple of the communications, Robinson comments, "I imagine they[']re spiraling," "[t]his is just the beginning," "[i]t[']s desperation," and "[o]ne of their guys has been charged criminally and they want revenge," presumably referring to the criminal charges filed against McVey. It is unclear from the record whether these submissions

8

were ever presented to the judge, but the judge's written decision makes no reference to the communications.[2]

The State moved for reconsideration of the February 8, 2023, order, arguing that the WCPO should not be disqualified in its entirety. In support, the State included a letter dated February 27, 2023, addressed to FAP Robinson from the AG's office, advising that from the facts presented, there did not appear to be "a direct conflict [of interest] requiring supersession" by the AG's office and that the WCPO should continue to prosecute the case and "continue to wall off Prosecutor Pfeiffer." McVey opposed the State's motion and also moved for reconsideration of the denial of his motion to dismiss the indictment.

On April 24, 2023, the judge heard oral argument on the parties' respective motions to reconsider. On May 8, 2023, the judge issued an order and written opinion denying both motions, finding that the motions did not meet the standard for reconsideration. Specifically addressing the State's motion, the judge reasoned that the AG's letter "was never mentioned or brought . . . to the court's attention prior to . . . February 8, 2023." Further, the judge reiterated that the WCPO "clearly" has "a conflict of interest," elaborating that:

---

[2] The discovery request for messages between Robinson and Tersigni was received on March 30, 2023.

A-3152-22

The issue of impropriety remains present as the [WCPO], small in number, was influenced by the conflict between [McVey] and [the Mayor], especially . . . the Prosecutor . . . having represented the Mayor before in a prior litigation. The fact that Prosecutor Pfeiffer was not immediately removed from the case prior to the request for submission of all evidence of the criminal coercion and misconduct on [McVey's] part to the [WCPO], clearly demonstrates impropriety. And although the other assistant prosecutors within the [WCPO] may have screened off the prosecutor from the case, Warren County has a very small group of prosecutors. There is indeed a very real possibility that the other prosecutors would have been aware or influenced with knowledge of this case, especially the First Assistant.

We granted the State's motion for leave to appeal from both orders on June 15, 2023. We invited the AG to participate as amicus, and granted the Association of Criminal Defense Lawyers of New Jersey's (Association's) motion to appear as amicus. After the appeal was perfected and oral argument was scheduled, with McVey's consent, the State requested an adjournment because Pfeiffer had resigned and the AG had superseded the WCPO, appointing Anthony Picione as the Acting WCP. We were later informed that Robinson had also resigned.

During oral argument before us, the State acknowledged that with the AG's supersession of the WCPO, although the appeal was not moot, the conflict of interest underlying the dispute was moot. We believe this is a distinction

without a difference. There is no cross-appeal challenging the indictment on the ground that the indictment was tainted by the conflict of interest. There is only the State's appeal, arguing that the judge misapplied the standard for evaluating disqualifications based on a conflict of interest and forced "compulsory reassignment" of the case upon the AG's office in violation of the separation of powers doctrine and N.J.S.A. 52:17B-106.[3] We believe that the appeal in its current posture is moot.

"Courts normally will not decide issues when a controversy no longer exists, and the disputed issues have become moot." Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010). "A case is technically moot when the original issue presented has been resolved, at least concerning the parties who initiated the litigation." Ibid. (quoting DeVesa v. Dorsey, 134 N.J. 420, 428 (1993) (Pollock, J., concurring)). Stated differently, "[a]n issue is moot when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006) (internal quotation marks omitted) (quoting N.Y.

---

[3] The AG supports the State's position, and the Association supports McVey's opposition.

A-3152-22

Susquehanna & W. Ry. Corp. v. State, Dep't of Treasury, 6 N.J. Tax 575, 582 (Tax 1984), aff'd, 204 N.J. Super. 630 (App. Div. 1985)).

We will consider an issue notwithstanding its mootness if it "presents a question that is both important to the public and likely to recur." Clymer v. Summit Bancorp., 171 N.J. 57, 65-66 (2002); see State v. Harvey, 176 N.J. 522, 528 (2003) (noting that the County Prosecutor's return to the bench "rendered moot any conflict that might have arisen because of [his] prior status as prosecutor"); see also State v. Hackett, 166 N.J. 66, 70 (2001) (electing to resolve criminal appeal even though defendant had passed away because case involved "important public issues in need of resolution"); State v. Gartland, 149 N.J. 456, 464-65 (1997) (observing that resolving issues that are both significant and likely to recur "is worth the judicial effort"). Because we do not believe the issue presented in this appeal meets the governing standard, we elect to dismiss the appeal as moot.

In reaching this decision, we are mindful that in State v. Smith, 478 N.J. Super. 52, 55 (App. Div. 2024), we recently considered "whether an entire county prosecutor's office must be recused from a criminal prosecution when the county prosecutor has a personal, disqualifying conflict." There, the defendant, who was charged with multiple criminal offenses initiated by a

Monmouth County Prosecutor's Office (MCPO) gang task force, "moved to recuse the entire MCPO from prosecuting him" because the Monmouth County Prosecutor had represented him "[f]or approximately seven months" while "engaged in the private practice of law" over a year earlier. Id. at 55-56. Since becoming the Monmouth County Prosecutor, the Prosecutor "ha[d] been screened from th[e] case" and "had no communications about th[e] case with MCPO prosecutors and investigators assigned to it." Id. at 65.

After considering the applicable Rules of Professional Conduct (RPC) as well as New Jersey caselaw, and canvassing the disqualification rule adopted in other jurisdictions, we affirmed the trial court's order denying the defendant's disqualification motion. Id. at 67; see RPC 1.9 (addressing conflicts of interest related to former clients); RPC 1.11 (addressing successive government and private employment); RPC 1.10 (imputing conflicts among lawyers in a private law firm).

We held:

> We, therefore, adopt the majority rule and conclude automatic disqualification of the entire prosecutor's office is not required. Instead, this rule requires disqualification of the entire prosecutor's office only where the prosecutor was not effectively screened or has shared confidential information he or she learned while representing the defendant. In short, our analysis of the law on conflicts and our

consideration of the policies embodied in the RPCs support a rule where individual, personal conflicts of county prosecutors are not imputed to the entire office.

. . . A more flexible rule is particularly well-suited in New Jersey because the State Attorney General has ultimate supervision over county prosecutors. While the county prosecutor supervises the county office, the county prosecutors and the county prosecutors' offices are ultimately subject to the Attorney General's supervision and control. N.J.S.A. 52:17B-103; see also Yurick v. State, 184 N.J. 70, 79-80 (2005) (explaining the Attorney General's supervisory powers over county prosecutors). Consequently, the Attorney General may supervise a county prosecutor and his or her office and, where appropriate, decide to step in and take over a prosecution. N.J.S.A. 52:17B-106 to -107; Wright v. State, 169 N.J. 422, 438 (2001) (explaining that "'the Attorney General's supersedure power appears to have been bestowed with the understanding that it was intended to ensure the proper and efficient handling of the county prosecutors' "criminal business"'" (quoting Coleman v. Kaye, 87 F.3d 1491, 1501 (3d Cir. 1996))). So, unlike the situations where other states have adopted a per se rule, in New Jersey the county prosecutor is not the ultimate supervisor because that responsibility rests with the Attorney General. Thus, we are satisfied that the Attorney General's supervision over county prosecutors will ensure that complete disqualification of the entire prosecutor's office is not necessary so long as the county prosecutor is properly screened and has no oversight of the matter.

[Smith, 478 N.J. Super. at 64-65.]

14

Under N.J.S.A. 52:17B-106, the AG has the broad power to supersede the County Prosecutor

> for the purpose of prosecuting all of the criminal business of the State in said county, intervene in any investigation, criminal action, or proceeding instituted by the county prosecutor, and appear for the State in any court or tribunal for the purpose of conducting such investigations, criminal actions or proceedings as shall be necessary for the protection of the rights and interests of the State.
>
> Whenever the Attorney General shall have superseded a county prosecutor as aforesaid, the county prosecutor, the assistant county prosecutors and other members of the staff of the county prosecutor shall exercise only such powers and perform such duties as are required of them by the Attorney General.

On a more limited basis, N.J.S.A. 52:17B-107 authorizes the AG in "the interest[] of the State" to "supersede a county prosecutor in any investigation, criminal action or proceeding."

Because the AG has already superseded the WCPO pursuant to N.J.S.A. 52:17B-106, whether we affirm or reverse the judge's disqualification order effectively requiring the AG to supersede the prosecution of McVey is of no

15

moment because the AG has already taken over the prosecution by virtue of his supersedure of the entire WCPO.[4]  Accordingly, the appeal is moot.

Appeal Dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

---

[4]  To underscore the point that the WCPO has been superseded by the AG, the same attorney representing the AG's office as amicus curiae represented the State during oral argument before us.

A-3152-22