**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2847-22

KEVIN KELLY,

     Plaintiff-Appellant,

v.

COUNTY OF SUSSEX, and
COMMISIONERS CARNEY,
FANTASIA and YARDLEY,

     Defendants-Respondents.

_____

          Argued September 16, 2024 – Decided March 14, 2025

          Before Judges Gummer and Jacobs.

          On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0256-22.

          George T. Daggett argued the cause for appellant.

          Michael L. Collins argued the cause for respondents (King, Moench & Collins, LLP, attorneys; Michael L. Collins, of counsel and on the brief; Krishna R. Jhaveri, on the brief).

PER CURIAM

After he was not appointed to a second term as County Counsel, plaintiff Kevin Kelly filed a lawsuit against the County of Sussex and three members of the Sussex County Board of County Commissioners (the Board), alleging they had violated the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. The trial court granted defendants' motion to dismiss the complaint for failure to state a claim pursuant to Rule 4:6-2(e), finding plaintiff in his pleading had failed to establish a prima facie claim for CEPA. Plaintiff appeals from that order and a subsequent order denying his reconsideration motion. We affirm.

I.

"In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 482 (App. Div. 2015) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005)); see also AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co., 256 N.J. 294, 311 (2024) (same). We derive these facts from those sources.

A-2847-22

Section 2.10 of the Sussex County Administrative Code[1] authorizes the Board to appoint a County Counsel to a three-year term consistent with N.J.S.A. 40A:9-43, which gives each county board the power to "appoint a county counsel" and sets three years as "[t]he term of office of the county counsel." Section 2.10 designates County Counsel as "the chief legal advisor to the Board and the Constitutional Officers" and lists the duties of County Counsel:

(A) advise the Board and all County agencies and advise the Constitutional Officers when requested to do so;

(B) approve the legal form and sufficiency of all contracts, deeds and other documents and prepare all ordinances and resolutions requested by the Board;

(C) represent the Board and the agencies under the Board's jurisdiction in all litigation, appeals, proceedings before the administrative agencies and recommend settlement in any matter where he feels it appropriate;

(D) maintain records of all actions, suits and proceedings relating to the County's interest and submit reports to the Board on such matters on request;

(E) represent the Constitutional Officers in all legal matters related to their official duties; [and]

---

[1] Defendants included in their appellate appendix a copy of the 2016 version of Section 2.10 of the Code. The language of that version of the Code mirrors the current version of the Code, which was adopted in 2019.

> (F) render advisory opinions requested by the Board[.]
>
> [Sussex County, N.J., Code § 2.10.]

Section 2.10 allows County Counsel to "appoint, subject to the approval of the Board, such assistants or special counsels, as are necessary and within the allocation of the County budget . . . ." Although neither the code nor statutory provision requires the county-counsel position be full-time or part-time, section 2.10 expressly permits the County Counsel "to conduct private law practices."

In 2015, the Board appointed someone to serve as County Counsel for a three-year term. That person worked full-time as County Counsel and received a salary and health and retirement benefits. He was not appointed to a second term.

Before plaintiff's appointment in 2018, the Board decided to use a public bid process to obtain proposals for county-counsel services. The county-counsel position would revert to part-time service with itemized monthly billing statements based on an hourly rate of $150 and with no pension or benefits. The Technical Specifications attached to the Request for Proposals (RFP) explained what the County was seeking:

> The County of Sussex is soliciting proposals from attorneys licensed to practice in the State of New Jersey to serve as County Counsel on a part-time basis. The

individual selected will be paid at a[n] hourly rate established by the [Board], and <u>will not be hired as an employee</u>, or <u>receive a salary or benefits</u>. The individual selected will be expected to personally perform the contractual services as County Counsel.

. . . .

The County especially reserves the right . . . to increase or diminish the quantities as may be deemed reasonably necessary or desirable . . . to complete the work detailed by the contract.

[(Emphasis added).]

The Specifications expressly provided under the heading "Contract Period" that "[t]he [c]ontract resulting from this proposal will be in effect from July 1, 2018, for a three (3) year period ending June 30, 2021." The Specifications also advised "[r]espondents are expected to examine the RFP with care and observe all its requirements."

The Specifications' "SCOPE OF SERVICES" section again referred to the role of County Counsel as being "part-time," set an hourly rate of $150, and explained that County Counsel was "expected to" attend certain meetings, "[p]rovide direct management and oversight of the Office of the Sussex County Counsel"; provide advice and report to the Board and other designated individuals, and "[m]aintain contact with" and "provide ongoing supervision and coordination" of "approximately eight approved Special Counsel." The

Specifications also provided County Counsel had to "procure and maintain, at its own expense, [certain] minimum levels of insurance."

In June 2018, the Board appointed plaintiff to a three-year term as County Counsel, beginning on July 1, 2018, and ending on June 30, 2021. At the time he was appointed, plaintiff had been practicing law for almost forty years.

In May 2021, the Board again solicited proposals to serve as County Counsel for another term through "the fair and open process." Plaintiff was not appointed for another term.

On June 24, 2022, plaintiff filed a two-count complaint. He alleged that while County Counsel, he had "objected to and refused to assist [d]efendants in violating the law and public policy," specifically referencing his objections to and reports of the purportedly illegal or otherwise wrongful acts of Sussex County Sheriff Michael F. Strada. He characterized the Board's decision not to appoint him to a second term as a "terminat[ion]" of his "contract on June 30, 2021" and asserted the Board had replaced him with Strada's personal attorney. Plaintiff claimed he was terminated for refusing to "sanction" a proposed ballot question and "Strada's personal legal bills." He alleged defendants retaliated against him by creating "an ongoing hostile work environment," "undermining his performance as [County] Counsel," "termination," and other unspecified

6

"adverse employment actions."  In count one, plaintiff alleged defendants, by their purported adverse employment actions, had violated CEPA.  In count two, he alleged they violated CEPA by creating a hostile work environment.

On August 15, 2022, defendants moved to dismiss plaintiff's complaint for failure to state a claim under Rule 4:6-2(e).  Defendants argued plaintiff failed to state a valid CEPA claim because the facts he alleged in the complaint did not demonstrate he was an employee as a matter of law, he had suffered an adverse employment action, or a causal connection between whistle-blowing activity and an adverse employment action.

In opposition to the motion, plaintiff submitted his certification.[2]  In his certification, plaintiff asserted he was "required by the County to be physically present with established office hours in the Administration Building on a daily basis" and to be "on call 24/7 to deal with emergent matters."  However, he admitted he had continued his private legal practice with the law firm Kelly & Ward (K&W), which he and his partner formed in 1998.  He stated his "practice was to spend mornings at K&W, afternoons at the County and return to K&W after 5:00 p.m."  According to plaintiff, the County made available to him

---

[2] Plaintiff included in his appellate appendix a copy of his certification but not the exhibits attached to the certification.

A-2847-22

County Counsel stationery, business cards, and other office equipment. He asserted K&W "provided no resources to the County and the County provided no resources to [K&W]" and that "[e]very effort was made . . . to prevent any intermingling of these offices and the work of each office," but he conceded the "[p]ayments for [his] services [to the County] were deposited in the firm's only operating account along with all revenue generated by either [plaintiff] or [his law partner]."[3] He asserted the "majority of [his] revenue as an attorney came from the position of County Counsel."

He described the County's "Legal Department" as consisting of himself, an Assistant County Counsel, and a "paralegal/secretary." He referenced "[t]he County's Organization Chart" and stated it showed County Counsel had "reporting obligations" to the Board and County Administrator. He set forth his responsibilities as County Counsel, which were consistent with the duties outlined in section 2.10 of the Sussex County Administrative Code.

---

[3] The record also includes monthly purchase orders apparently signed by plaintiff as County Counsel for K&W as "vendor" for services rendered as County Counsel, invoices K&W submitted to the County "[i]n [r]eference [t]o: Office of the County Counsel," and checks issued by the County to K&W. Plaintiff does not contend those documents were not "matters of public record." Banco Popular N. Am., 184 N.J. at 183.

The court heard argument and, on December 28, 2022, entered an order with a statement of reasons granting defendants' motion and dismissing the complaint with prejudice. Citing D'Annuzio v. Prudential Insurance Co. of America, 192 N.J. 110, 122 (2007), and applying the facts presented by plaintiff to the twelve-factor test established in Pukowsky v. Caruso, 312 N.J. Super. 171, 182-83 (App. Div. 1998), the court concluded plaintiff's position as County Counsel did not constitute an employer-employee relationship for purposes of CEPA and, because his factual allegations were not sufficient to support that element of his claim, plaintiff failed to state a claim on which relief could be granted.

The court found plaintiff could not establish he had suffered a retaliatory action because the Board's decision to allow his three-year term as County Counsel to expire and not appoint him to a second term was "insufficient to establish that [p]laintiff suffered a 'discharge, suspension, or demotion[,]' [(quoting N.J.S.A. 34:19-2(e)),] or was 'terminated.'" The court held plaintiff's "conclusory allegations" that he had suffered an adverse employment action or hostile work environment failed "to establish any basis upon which to find that he suffered 'discriminatory conduct,' let alone physically threatening or humiliating circumstances, as necessary for a hostile work environment."

Plaintiff moved for reconsideration. After hearing argument, the court entered on May 22, 2023, an order with a statement of reasons denying plaintiff's motion. The court held plaintiff had not established its decision was based on an incorrect or irrational basis and had not provided any new evidence or information. The court rejected plaintiff's argument it had converted the motion to dismiss into a summary-judgment motion, stating it had based its decision on the allegations in the complaint and public records defendants had submitted.

Appealing from the December 28, 2022 and May 22, 2023 orders,[4] plaintiff argues the court "failed to understand the important social ramifications of CEPA, and the relationship of CEPA to the Code of Professional Ethics." He contends with the information set forth in the certification he submitted in opposition to the motion to dismiss, he established he qualified as an employee under CEPA. He also argues a failure to renew a contract can constitute retaliation.

We note plaintiff does not raise or brief on appeal the court's finding he had failed to allege facts necessary to establish the existence of a hostile work environment. Nor does plaintiff argue the court erred in deciding the issues

---

[4] In a March 5, 2024 order, the Supreme Court denied plaintiff's motion for direct certification.

before it without requiring the parties to conduct discovery. Accordingly, we deem those issues and the dismissal of the hostile-work-environment claim waived and do not address them. See Green Knight Cap., LLC v. Calderon, 469 N.J. Super. 390, 396 (App. Div. 2021) (declining to reach an issue plaintiff had failed to raise or brief on appeal); N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) (finding "[a]n issue that is not briefed is deemed waived upon appeal").

II.

We review a decision on a Rule 4:6-2(e) dismissal motion "de novo, affording no deference to the trial judge's legal conclusions." Maia v. IEW Constr. Grp., 257 N.J. 330, 341 (2024). In that de novo review, we determine "whether a cause of action is 'suggested' by the facts." Ibid. (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). "[W]e accept the facts alleged in the complaint as true, granting plaintiff 'every reasonable inference of fact.'" Guzman v. M. Teixeira Int'l, Inc., 476 N.J. Super. 64, 67 (App. Div. 2023) (quoting Major v. Maguire, 224 N.J. 1, 26 (2016)).

We affirm the dismissal of a complaint when the complaint "fails to state a 'claim that supports relief, and discovery will not give rise to such a claim . . . .'" Maia, 257 N.J. at 341-42 (quoting Dimitrakopoulos v. Borrus, Goldin,

11

Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019)).  "[T]he essential facts supporting [the] plaintiff's cause of action must be presented in order for the claim to survive; conclusory allegations are insufficient in that regard."  AC Ocean Walk, 256 N.J. at 311 (quoting Scheidt v. DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012)).  "[L]egal sufficiency requires allegation of all the facts that the cause of action requires."  Cornett v. Johnson & Johnson, 414 N.J. Super. 365, 385 (App. Div. 2010), aff'd as modified, 211 N.J. 362 (2012), abrogated on other grounds by McCarrell v. Hoffmann-La Roche, Inc., 227 N.J. 569, 590-92 (2017).  Thus, "a dismissal is mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted."  Rieder v. State, Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987).

We review a trial court's order on a reconsideration motion under an abuse-of-discretion standard.  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).  A court abuses its discretion when its "decision [is] made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis."  United States v. Scurry, 193 N.J. 492, 504 (2008).  "[A] trial court's legal conclusions are reviewed de novo."  State v. Erazo, 254 N.J. 277, 297 (2023).

Turning to the cause of action at issue in this appeal, CEPA, we recognize "[t]he Legislature enacted CEPA to 'protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'" Allen v. Cape May Cnty., 246 N.J. 275, 289 (2021) (quoting Dzwonar v. McDevitt, 177 N.J. 451, 461 (2003)). CEPA "seeks to overcome victimization of employees and to protect those who are especially vulnerable in the workplace from the improper or unlawful exercise of authority by employers." Sauter v. Colts Neck Volunteer Fire Co. No. 2, 451 N.J. Super. 581, 588 (App. Div. 2017) (quoting Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 418 (1994)).

Accordingly, the statute "shields an employee who objects to, or reports, employer conduct that the employee reasonably believes to contravene the legal and ethical standards that govern the employer's activities." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 27 (2014); see also N.J.S.A. 34:19-3(a), (c). To that end, CEPA prohibits an employer from retaliating "against an employee who discloses, threatens to disclose, or refuses to participate in an activity of the employer 'that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law.'" Sauter, 451 N.J. Super. at 587 (quoting N.J.S.A. 34:19-2 to -3).

To establish a prima facie CEPA claim, a plaintiff must demonstrate:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Allen, 246 N.J. at 290 (quoting Dzwonar, 177 N.J. at 462).]

Because "CEPA created 'a statutory exception to the general rule that an employer may terminate an at-will employee with or without cause,' . . . the employer-employee relation is at the heart of the statute." Sauter, 451 N.J. Super. at 587 (quoting Higgins v. Pascack Valley Hosp., 158 N.J. 404, 418 (1999)). CEPA "defines an employee broadly as 'any individual who performs services for and under the control and direction of an employer for wages or other renumeration.'" Ibid. (quoting N.J.S.A. 34:19–2(b)).

Although "CEPA's definition of 'employee' is broad," the Supreme Court in D'Annunzio "did not 'extend' the statute to independent contractors" but rather "acted to ensure CEPA's protections for those workers, regardless of label, who stand in a true employer-employee relationship with the . . . entity purchasing their services." Sauter, 451 N.J. Super. at 591. "In disputes over a worker's

14

status under [CEPA], 'what matters most is that an individual's status be measured in the light of the purpose to be served by [CEPA].'" Est. of Kotsovska ex rel. Kotsovska v. Liebman, 221 N.J. 568, 595 (2015) (quoting D'Annunzio, 192 N.J. at 122 n.7).

In D'Annuzio, the Court identified three considerations that "must come into play" when "CEPA . . . is applied in the setting of a professional person or an individual otherwise providing specialized services allegedly as an independent contractor": "(1) employer control; (2) the worker's economic dependence on the work relationship; and (3) the degree to which there has been a functional integration of the employer's business with that of the person doing the work at issue." 192 N.J. at 122. The Court held "[t]he test for determining those aspects of a non-traditional work relationship was set out in Pukowsky" and confirmed its "acceptance of that test as appropriate for CEPA purposes." Ibid.

Under the Pukowsky test, a court should consider the following factors when determining if a plaintiff qualifies as an employee:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation—supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination

of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.

[312 N.J. Super. at 182-83.]

The factors should be examined in the context of the "totality of the circumstances." Id. at 182. "[A] number of the factors overlap, and [courts] weigh the factors qualitatively rather than quantitatively." Hoag v. Brown, 397 N.J. Super. 34, 48 (App. Div. 2007).

The trial court, as we do now, analyzed each of the Pukowsky factors. The court found each factor weighed against finding plaintiff was the County's employee. The court found the first, second, and third factors weighed against plaintiff's position because he had performed "unsupervised" work "that required the use of his independent professional judgment, skill, and compliance with relevant professional standards for attorneys" and "[d]efendants did not have the right to control the means and manner of [his] performance."

County Counsel's duties are determined by the County's Administrative Code. The duties plaintiff certified he had performed as County Counsel matched those enumerated in the Code. See Sussex County, N.J., Code § 2.10. According to plaintiff, he was required to work "established office hours" in the

Administration Building, but he also certified he set those hours, stating it was "[his] practice . . . to spend mornings at K&W, afternoons at the County, and return to K&W" in the evening. He certified he had "reporting obligations" as County Counsel but did not state whether or how he was supervised, other than noting he was required to use attorneys approved by the Board, which was consistent with the Code provision that made his appointment of "assistants or special counsels" subject to Board approval. Id. at § 2.10(H). Plaintiff's skill and experience as an attorney are undisputed; so too is his obligation to exercise independently his professional judgment in accordance with the Rules of Professional Conduct in representing his clients. See Stomel v. City of Camden, 192 N.J. 137, 155 (2007) (finding a municipal public defender was required to "exercise independent professional judgment" without city supervision).[5] We

_____

[5] In Stomel, the Court ultimately affirmed this court's conclusion the plaintiff could be viewed an employee for purposes of advancing a CEPA claim based on its review of the facts of that case. Id. at 141. Those facts are distinguishable from the facts plaintiff alleges in this case. The plaintiff in Stomel had served as Camden's municipal public defender for seventeen years. Id. at 142. Throughout that time, the city paid him monthly based on an annual salary. Id. at 155. He was not paid until the city's law department certified his work had been done satisfactorily. Id. at 156. The municipal court scheduled appointments for indigent people to meet with him. Ibid. Sometimes his appointment was renewed through a new annual contract; sometimes he served without a new contract, following the terms of the last contract. Id. at 142. At the time of the alleged adverse employment action, he had not had a new contract

recognize that plaintiff did not control every aspect of his work as County Counsel. But the first three Pukowsky factors nevertheless tilt against finding an employer-employee relationship.

The trial court found the fourth Pukowsky factor – the provider of equipment and workplace – did not support plaintiff's position because plaintiff "utilized the resources of his law firm to perform his County Counsel duties" when he submitted "itemized billing entries . . . on letterhead provided by [K&W], not by the County." Plaintiff may have used his firm's letterhead to submit invoices, but the County provided him with office space and equipment to be used in his capacity as County Counsel. This factor tilts in favor of finding an employer-employee relationship.

The trial court held the fifth and seventh Pukowsky factors – the length of time the individual has worked and the manner of termination of the work relationship – did not support plaintiff's position because his role as County

---

in over a year. Id. at 142-43. The plaintiff testified as a government witness in a criminal trial of the municipal prosecutor, who had solicited a contribution from the plaintiff, threatening he could not guarantee his reappointment if he failed to contribute. Id. at 143. The plaintiff's testimony implicated the mayor. Three days after a mistrial was declared in that trial, the mayor sent the plaintiff a letter, advising him he was being replaced as the municipal public defendant by another attorney in approximately two weeks. Ibid. Based on those facts, the Court concluded the plaintiff had set forth a prima facie case he was an employee for CEPA purposes. Id. at 156.

Counsel was "meant to be a part-time position under the clear terms of the . . . RFP" and was limited by code and statute to a three-year term, which had expired. See N.J.S.A. 40A:9-43; Sussex County, N.J., Code § 2.10. We agree these factors do not support finding an employer-employee relationship.

The trial court held the sixth factor – the method of payment – did not support plaintiff's position because the County paid for County Counsel services by issuing checks to K&W based on K&W invoices. In addition, as plaintiff conceded in his certification, those payments were deposited in K&W's operating account. The court also held the eighth, tenth, and eleventh factors, which address various types of employee benefits, did not favor plaintiff's position because he did not receive any of those benefits. We agree that all of those factors cut strongly against finding plaintiff was the County's employee.

As for the ninth factor, whether the work is an integral part of the business at issue, the trial court found "[p]laintiff's role as County Counsel c[ould not] be described as an integral part of the business of the employer, which is a government entity" because his task was "to fulfill the specific, limited role of providing legal services as and when needed by the County" pursuant to section 2.10 of the Code. We believe this factor based on the existing record favors a finding of an employer-employee relationship. It is true that as County Counsel,

19

plaintiff was not governing. Cf. Sauter, 451 N.J. Super. at 593 (finding the work of a firefighter was an integral part of the business of a fire company). But giving plaintiff "every reasonable inference of fact," Major, 224 N.J. at 26, it is fair to conclude he played an important and possibly integral role in enabling those who governed to govern.

Regarding factor twelve, the parties' intention, the trial court held the RFP's Technical Specifications made clear the County was seeking the services of a "part-time" County Counsel who would "not be hired as an employee, or receive a salary or benefits."[6] We agree that factor strongly cuts against finding an employer-employee relationship. We recognize a label placed on a job is not determinative of whether an employer-employee relationship exists. Sauter, 451 N.J. Super. at 591. But how a position is described to those applying for it can provide critical insight into the parties' intention.

Weighing those factors qualitatively, we conclude plaintiff's factual allegations, even considering those made in his certification, are not sufficient to support a finding he was the County's employee. Without supporting that

---

[6] In his certification, plaintiff stated his "understanding of the words 'not be hired as an employee' as used in the Technical Specifications refers to the words 'salary or benefit' that directly follow." That assertion does not cause us to question the clarity of the RFP's language or plaintiff's ability to understand it.

critical element of his CEPA claim, plaintiff failed to state a claim on which relief can be granted and the trial court appropriately granted defendants' motion to dismiss.

In the interest of completeness, we now turn to the trial court's conclusion about whether plaintiff made sufficient factual allegations to support the third prong of his CEPA claim:  whether defendants took an adverse employment action against him.   Allen, 246 N.J. at 290.   Under N.J.S.A. 34:19-2(e), "retaliatory action" is defined as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."  However, "[w]hat constitutes an 'adverse employment action' must be viewed in light of the broad remedial purpose of CEPA."  Donelson v. DuPont Chambers Works, 206 N.J. 243, 257 (2011).

When a plaintiff has sufficiently alleged an employer took an adverse employment action as a pretext for discrimination, "the burden of persuasion is shifted to the employer to rebut the presumption of discrimination by articulating some legitimate nondiscriminatory reason for the adverse employment action."  Allen, 246 N.J. at 290-91 (quoting Kolb v. Burns, 320 N.J. Super. 467, 478 (App. Div. 1999)).  If the employer articulates a legitimate nondiscriminatory reason for its action, the burden shifts back to the plaintiff to

prove "the employer's proffered reasons were a pretext for the discriminatory action taken by the employer." Id. at 291 (quoting Kolb, 320 N.J. Super. at 478)

The trial court held plaintiff could not establish he suffered a retaliatory action because he had been appointed to a three-year statutory term that expired as a matter of law. Citing Abbamont v. Piscataway Township Board of Education, 269 N.J. Super. 11 (App. Div. 1993), aff'd, 138 N.J. 405 (1994), plaintiff argues the court "failed to recognize that failure to renew a contract is a CEPA retaliatory action." The problem with plaintiff's argument is that this case does not involve the renewal of a contract; it involves the expiration of a term of office set by the Legislature.

The plaintiff in Abbamont, 138 N.J. at 410, was a non-tenured public-school teacher who had been hired on an annual basis for three consecutive school terms. After he complained about safety conditions at the school and while he was on a permitted temporary leave of absence, he received a letter from the board of education advising him he would not be rehired. Id. at 413-14. The plaintiff's CEPA case was tried, and the jury returned a verdict in his favor. Id. at 413. The Court affirmed a decision of this court reinstating the jury's verdict after the trial court had dismissed the complaint after the verdict was rendered. Id. at 413, 435.

22

The plaintiff in Yurick v. State, 184 N.J. 70, 73 (2005), was a former county prosecutor who alleged the Governor and others had violated CEPA in exercising the statutory power to supersede him as prosecutor after the expiration of his five-year term. Id. at 74. That term was established by the Legislature in N.J.S.A. 2A:158-1. Focusing on the unique characteristics of the county-prosecutor position and on the wide discretion a governor has in exercising the power of supersession, the Court reinstated the trial court's dismissal of the plaintiff's CEPA claim. Id. at 83. Holding supersession was "not the equivalent of removal from office," the Court noted "[p]laintiff may have hoped to remain as a holdover officer in charge of the operation of his office at the conclusion of his five-year term, but he had no reasonable expectation that he would be permitted to do so." Ibid.

We think this case is more akin to Yurick. Unlike the plaintiff in Abbamont, plaintiff did not have a contractual relationship with defendants that had been renewed multiple times. Like the plaintiff in Yurick, he was a county official appointed for a limited term established by the Legislature. N.J.S.A. 40A:9-43. And like the plaintiff in Yurick, he may have hoped he would remain in office when his statutory term expired, but his factual allegations do not support the conclusion he had any "reasonable expectation that he would be

permitted to do so." <u>Yurick</u>, 184 N.J. at 83. Accordingly, we conclude plaintiff, who was subject to a statutory term of office, failed to allege an adverse employment action under CEPA.

Because plaintiff did not set forth a prima facie case supporting the elements of a CEPA cause of action, we affirm the December 28, 2022 order granting defendants' motion to dismiss and the May 22, 2023 order denying plaintiff's reconsideration motion.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division